RUTHER v. TYRA.

No. 34953.    Sept. 9, 1952.

*247 P. 2d 964.*

Pierce, Rucker, Mock, Tabor & Duncan and James S. Steph, Oklahoma City, for plaintiff in error.

Meacham, Meacham, Meacham & Meacham, Clinton, for defendant in error.

GIBSON, J.  Two young men were involved in a head-on collision of their automobiles on U. S. Highway No. 183, a short distance north of the town of Arapaho, in Custer county, on May 3, 1950.  The accident occurred on a black-top highway 22 feet wide with shoulders extending it to a 36 foot highway.  At the place of collision the road was straight, and it was not yet dark.  Plaintiff, 25 years of age, a student at A. & M. College, was driving a Studebaker automobile south, and defendant, 19 years old, was driving a Ford car north.  The collision occurred just east of the center line of the paved road.  Both parties sustained severe injuries as a result of the accident.

Plaintiff commenced the action, alleging in his petition that defendant was negligent in that he was driving his vehicle on the west or wrong side of the road in violation of the statute; that he was driving at a high and dangerous rate of speed under the circumstances then existing; that he was operating his vehicle in such a manner that he was unable to control it and was not acting as a reasonable and prudent person would have acted under the circumstances.

He testified that he was driving south at about 55 miles and not to exceed 60 miles per hour; that he saw the Ford when about 300 feet away; that the Ford was then on the west or wrong side of the road and "zig-zagging"; that plaintiff thought the driver of the Ford intended pulling off the road to the west; that he himself turned gradually to the east to pass defendant but defendant suddenly turned his car back to the east side in front of plaintiff and although plaintiff applied his brakes he was unable to avoid the collision.

Defendant denied that he had been driving on the west side of the road at any time, and said that the first he saw of plaintiff's car it was immediately in front of him and east of the center line of the highway; that the collision occurred and defendant was knocked unconscious and remained in that condition for about five days. As a result of the accident plaintiff sustained shock, a broken jaw, fractured hip, pelvis and ankle and loss of teeth. Defendant sustained shock and fractures of the right shoulder, leg, ribs and skull.

The cause was submitted to a jury which returned a unanimous verdict for defendant, on this cross-petition, awarding damages for hospital and doctor bills, pain and suffering and loss of earning power and for exemplary damages in the aggregate sum of $25,056.75.

In his appeal plaintiff urges three propositions: error in permitting a highway patrolman to testify to opinions and conclusions, invading the province of the jury; error in overruling plaintiff's motion to withdraw from the jury consideration of defendant's allegation that plaintiff was operating his vehicle while under the influence of intoxicating liquor, and error in instructing the jury on the issue of exemplary damages.

Plaintiff called as his witness one Bill Large, a trooper of the State Highway Patrol, and here complains of the testimony of the witness on cross-examination. It is said that the witness was qualified by plaintiff to a limited extent but that no qualifications were shown to answer question propounded on cross-examination. In qualifying the witness plaintiff established that Bill Large had been a member of the Patrol for nine years; that he arrived at the scene of the accident about 15 minutes after it occurred; that he had studied automobiles and that the Studebaker weight was considerably more than that of the Ford; that he observed tire marks on the pavement;

that the Studebaker marks were for 157 feet; and that 34 feet from the point of collision plaintiff's left front tire crossed the center line of the highway. That a study of automobiles provides a rule-of-thumb theory that an automobile at a speed of 60 miles per hour will travel 90 feet in one second or that it is accurate to say that the feet traveled per second will be one and one-half times the miles per hour at which it is traveling. He further testified for plaintiff that he was familiar with the reaction time required of a person, confronted with an emergency, to do something intended to meet the emergency, and the average reaction time varies from one-half to three-quarters of a second for one to apply brakes when the need occurs. He further testified as to the factors of efficiency in applying brakes, such as condition of the brakes, condition of the tires and of the road surface. Plaintiff produced a chart showing distance a car will travel per second at any given speed and had the witness testify as to distances required to stop a moving car, on average pavement, while traveling at different rates of speed. All this testimony was given without objection of defendant.

On cross-examination the witness was questioned: "Bill, from your knowledge and from your investigation out there—you saw the roadway and the cars, the locations of them and what happened, how fast was this Ruther car going just before he put on his brakes?" Over strenuous objections by plaintiff, which were overruled, the witness answered: "75 to 80 miles an hour." Upon being made defendant's witness, and over plaintiff's objections, the witness further testified that in his opinion plaintiff's car was traveling 35 miles per hour at the time it hit the Ford, and that from the skid marks on the pavement the brakes of the Ford had not been applied before the collision, and that the Ford had been knocked back from the point of its furthest advance a distance of three feet to the south and fifteen feet to the southeast.

Plaintiff now contends that admission of this testimony was error in that it constituted opinion and conclusion and that the witness was not qualified. But plaintiff had produced and vouched for the witness and had qualified him as to experience and study in estimating speed of an automobile when compared with distance traveled per second, and as to a stopping distance under various speeds. If qualified to answer plaintiff's questions the witness was qualified to apply his method of computation and calculate the speed of a car from a given distance with brakes applied, as evidenced by skid marks on the pavement.

"Whether or not the qualifications of a witness with respect to knowledge or special experience is sufficiently established is a preliminary question for determination by the trial judge, and his ruling thereon will not be disturbed, in the absence of a showing of abuse of judicial discretion." Kurn v. Margolin, Adm'r, 187 Okla. 135, 101 P. 2d 818.

Plaintiff cites Hadley v. Ross, 195 Okla. 89, 154 P. 2d 939. The case is not in point. The issue in that appeal was the admissibility of a certified copy of a highway patrolman's report of an accident. We said "This report was wholly ex parte and based upon information which had been imparted to the officer by undisclosed informants." In the instant case the witness arrived at the scene immediately following the accident and, in the main, he testified concerning the demonstrated physical facts. Having been qualified, by plaintiff, as an expert, his opinion as to the speed of plaintiff's car was based on physical facts. At no time did he attempt to place the blame for or determine the cause of the collision. His testimony did not invade the province of the jury.

For the same reason the case of Beckman v. Schroeder, 224 Minn. 370, 28 N. W. 2d 629, cannot apply. There is a wide difference in the character of testimony given by the so-called experts in that case and the one before us. In the Beckman case, however, the court said that the competency of an expert witness is addressed to the sound discretion of the trial court, and further said that when the subject matter of the inquiry is outside the range of common knowledge expert evidence is admissible. Skid marks made upon a pavement by the tires of a moving vehicle have some relation to the speed of the vehicle. That relationship is not a matter of common knowledge, and plaintiff had qualified the witness Large as one who had made a special study of the stopping distance required of automobile drivers at various rates of speed, including the reaction time required of a driver to apply his brakes.

While a layman knows that a speeding car will produce skid marks upon a pavement when brakes are applied, and while it is a scientific fact that the speed of a motor vehicle can be closely approximated from the skid marks and other physical facts at the scene of the collision, the method of computing such speed from the physical facts is not a matter of common knowledge. Such computation can be made only by an expert who has given special study to the subject.

Answer to plaintiff's contentions as to the testimony of the witness Large is found in our recent opinion in Andrews v. Moery, 205 Okla. 635, 240 P. 2d 447, decided since the briefs herein were submitted, wherein we reviewed the decisions of various states construing the law applicable to the testimony of expert witnesses expressing opinions of speed of motor vehicles predicated on physical facts. Therein we held that the weight of authority supports the following rule:

"Opinion evidence of expert as to speed of truck involved in accident based upon length of skid marks is admissible."

It is urged that the court erred in overruling plaintiff's motion to withdraw defendant's allegation that plain-

tiff was driving his vehicle while under the influence of intoxicating liquor and in giving an instruction thereon.

On cross-examination plaintiff testified that he drank a can of beer not long prior to the accident; that there was one-fifth of wine in his car but that he had forgotten about it and it had never been opened. There is no subsequent history of the fifth of wine. Plaintiff's doctor who attended him at the hospital testified that he saw nothing to indicate that plaintiff had been drinking intoxicating liquor, but that in such an emergency with the patient near the point of death one does not go about trying to smell or elicit whether the patient had had a drink. On cross-examination the doctor stated that it was possible that plaintiff could have been drinking and he, as the attending doctor, would not have known it.

The court instructed that it was unlawful for a person under the influence of intoxicating liquor to operate a motor vehicle on the highway, and further charged:

"You are instructed that the term 'under the influence of intoxicating liquor', as the term is used in these instructions, means that if intoxicating liquor has so far affected the nervous system, brain or muscles of the driver of a motor vehicle as to impair to an appreciable degree his ability to operate his motor vehicle in the manner that an ordinarily prudent and cautious person in full possession of his faculties and using reasonable care would operate or drive a similar vehicle under like or similar circumstances, then such driver is under the influence of intoxicating liquor, as that term is used in these instructions."

The evidence is not clear and convincing proof of plaintiff being under the influence of intoxicating liquor at the time of the accident, and in view of the rigid burden of proof placed upon defendant in the above instruction we are not persuaded that the jury was greatly influenced by the allegation of defendant with reference to driving while under the influence of intoxicating liquor. We have not been shown that plaintiff was prejudiced by the above instruction.

In his cross-petition defendant alleged five separate grounds of negligence: that plaintiff was driving at an excessive speed in violation of 47 O. S. 1951 §121.3; two allegations that plaintiff was driving on the wrong side of the road at the time of the collision, which is an admitted fact in this case; that defendant was negligent in failing to keep a proper look-out; and, upon information and belief, that plaintiff was under the influence of intoxicating liquor at the time of the collision. There is an abundance of evidence in support of defendant's contentions as to plaintiff's speed and as to his driving on the wrong side of the road in violation of 47 O.S. 1951 §121.4.

"Instructions of the trial court must be viewed in the light of the evidence upon which they operate and of the instructions as a whole. When thus considered, if it does not appear probable that the rights of the complaining party were prejudiced by alleged errors in the instructions, a verdict against said party will not be set aside on account thereof." Prudential Insurance Co. v. Foster, 197 Okla. 39, 168 P. 2d 295.

See, also, Renegar v. Bogie, 199 Okla. 427, 186 P. 2d 820.

Plaintiff says that the trial court erred in instructing the jury on the issue of exemplary or punitive damages. In this contention plaintiff is sustained under the evidence and the law. Allowance of exemplary damages is governed by statute in this state. 23 O. S. 1951 §9 provides:

"In any action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud or malice, actual or presumed, the jury, in addition to the actual damages, may give damages for the sake of example, and by way of punishing the defendant."

"To entitle a plaintiff to recover exemplary damages in an action sounding

in tort, the proof must show some element of fraud, malice, or oppression. The act which constitutes the cause of action must be actuated by, or accompanied with, some evil intent, or must be the result of such gross negligence, such disregard of another's rights, as is deemed equivalent to such intent." Pure Oil Co. v. Quarles, 183 Okla. 418, 82 P. 2d 970.

We have searched this record and we do not find evidence sufficient to sustain an award for exemplary damages under the above statute and the announced rule. There was no malice or evil intent on the part of the plaintiff in this unfortunate accident. Under the evidence we cannot say that plaintiff's negligence was gross negligence or equivalent to an evil intent.

The jury separated its findings of damages and allowed $1,500 as punitive damages. The judgment on this item of exemplary damages is excessive.

The judgment is reversed, with directions to dismiss defendant's second cause of action and disallow the item of $1,500 exemplary damages, but in all other respects the judgment is affirmed.

Affirmed in part, reversed in part, with directions.

ARNOLD, C. J., HALLEY, V.C.J., and CORN, JOHNSON, O'NEAL, and BINGAMAN, JJ., concur.