**CONTINENTAL OIL COMPANY, a corporation, William Aud Ransom and J. C. Johnson, Plaintiffs in Error,**

v.

**Frank ELIAS, Defendant in Error.**

**No. 37085.**

Supreme Court of Oklahoma.

Dec. 26, 1956.

Rehearing Denied March 5, 1957.

R. D. Hudson, Tulsa, for plaintiff in error, Continental Oil Co.

D. F. Rainey, John Barksdale, Okmulgee, for plaintiffs in error, William Aud Ransom and J. C. Johnson.

K. D. Bailey, Okmulgee, Rucker, Tabor & Cox, Bryan W. Tabor, Thomas L. Palmer, Tulsa, for defendant in error.

CARLILE, Justice.

This is an appeal by Continental Oil Company, a corporation, William Aud Ransom and J. C. Johnson, from a verdict and judgment for a substantial sum rendered against them for damages arising from a truck and auto collision. Galen G. German was an original defendant in the case, but the action was dismissed against him at the conclusion of plaintiff's direct evidence. The parties will be referred to as they were in the District Court.

The plaintiff, Frank Elias, alleged in substance in his petition that on the morning of August 9, 1954 he was driving his automobile north along Highway 75 about four miles north of Beggs, Oklahoma, and attempted to pass a Ford 2 ton truck going in the same direction and which was driven by the defendant, William Aud Ransom, who was then and there the agent, servant and employee of the defendants, Johnson and Continental Oil Company, Johnson being the agent of the company, and said truck was being operated in furtherance of the business of the defendants, Johnson and Continental Oil Company; that the defendant Ransom, in violation of Title 47, § 121.5, par. (4), subsection 1, O.S.1951, suddenly and without giving any warning of his intention to do so until his action had commenced, carelessly and negligently drove the truck to the left across the center line of the

highway in an attempt to make a left hand turn into a county road in front of the automobile of Galen G. German, whose car immediately preceded plaintiff's car, and plaintiff could not avoid running into the rear of the truck driven by Ransom. It is further alleged that the defendant Ransom was physically unable to operate the truck he was driving, he having recently been released from a hospital where he had been recuperating from injuries received in a prior automobile accident; that the defendants, Johnson and the oil company, had knowledge of the lack of ability of Ransom to properly operate the truck on the highway and were negligent in permitting him to do so. The petition described the nature and extent of the plaintiff's injuries and damages which arose from the collision between plaintiff's automobile and the truck, and plaintiff prayed judgment for the damage alleged.

The Continental Oil Company filed an answer generally denying the allegations of plaintiff's amended petition and expressly denied that the defendant Johnson was its agent, servant or employee, and alleged that he was an independent contractor or wholesale representative jobber, engaged in distributing various and sundry materials and articles of merchandise for factories, refineries and firms, and held a contract with the answering defendant for distribution of its products, and that the parties thereto were not master and servant or agent and principal. A copy of the contract referred to was attached and made a part of the answer. It further alleged that the oil company had no power to control or direct the defendant Johnson, or his employees, in the manner or method of operating any truck, nor did it do so, and alleged that the defendant Ransom was a servant, agent and employee of the defendant Johnson. It further alleged that if it or the defendant Ransom were guilty of negligence then the plaintiff Elias was guilty of negligence which contributed to his injuries, if any, in that he, Elias, carelessly and negligently drove his automobile into the rear of the truck owned by the defendant Johnson,

and that plaintiff was driving at an unlawful rate of speed upon the left hand side of the highway at or near an intersection, and was attempting to pass the said truck and two other automobiles and failed to observe the state statute pertaining to driving and passing of vehicles on the highway. The defendant Ransom also filed answer denying the allegations of plaintiff's petition, and alleged that at the time of the collision referred to he was employed by his co-defendant Johnson and took instructions from him, and alleged that the plaintiff was driving at an excessive and unlawful speed on the left hand side of the highway and attempting to pass a procession of three vehicles, including the truck driven by Ransom, which truck was owned by his employer Johnson, and that as he approached a point on the highway where he desired to make a left turn on to a road leading west and approximately 200 feet south of the intersection he turned on his directional light signal, and that as the truck approached the intersection it was followed by a Pontiac car, and when the truck reached the intersection the Pontiac stopped and yielded the right of way to said defendant to make his signaled turn, and that as he proceeded to turn the traffic was such that he had to stop his truck, and that while so stopped the plaintiff approached and drove around the Pontiac car into the rear of the truck, and that the primary cause of the accident was the negligence of plaintiff, who was guilty of contributory negligence.

The defendant Johnson filed an answer denying plaintiff's allegations, and alleged that he, Johnson, owned the truck operated by the defendant Ransom and that Ransom was his employee and rendered services only for him, and that the relationship between Johnson and his co-defendant oil company was controlled by a written contract between them, which provided that all persons employed by the answering defendant were under his control and were not considered as employees of the oil company. The further allegations of the answer were in accord with the facts as alleged in the answer of defendant Ransom.

We will first consider the three propositions presented by the Continental Oil Company in support of its assignments of error. It asserts first that the written contract between it and defendant Johnson did not confer on the company any power to control, direct or supervise the physical movements or detail of Johnson or his employee Ransom in the manner and method of operating the tank truck involved in the accident, nor did the company control or supervise the work of Johnson and his employees in the manner and method of operating the truck, and that Johnson was an independent contractor as a matter of law, and the defendant oil company was not liable for the negligence, if any, of Johnson or his employee. Second, that the court erred in overruling its demurrer to the evidence at the close of plaintiff's case, and erred in denying its renewed demurrer and motion for a directed verdict at the close of the trial. And third, that an agent, unless he is also a servant, cannot make his principal liable for incidental negligence in connection with means employed to accomplish agent's work. The propositions so advanced involve the principal question of whether the defendant Johnson was a servant of the oil company or whether he was an independent contractor at the time of the accident.

The opinion in Sawin v. Nease, 186 Okl. 195, 97 P.2d 27, 30, cites cases which name the elements considered in determining whether one is the servant or an independent contractor, and further states:

"The cases discussing the law of independent contractors are almost without number, and usually an argument is easily obtained on the question whether in a given situation, the person in question is a servant or an independent contractor; but when the numerous judicial pronouncements are reduced to their decisive substance it is found that the hub of the entire controversy is whether the employer had the right to control, or purported or attempted to control, the manner of the doing of the thing, by the alleged servant, which resulted in the injury."

The record shows that the Continental Oil Company and its co-defendant Johnson were operating under a written "Bulk Station Commission Agreement", the substance of which is that Johnson, who was referred to therein for brevity as agent, agreed to take charge of the bulk station and stock of the oil company at Okmulgee in connection with the sale, storage and transfer of petroleum products therefrom and territory contributory thereto, keep the station in good condition and look after other property held by the company in said area in connection with the sale of petroleum products, and see that all lessees and holders of company equipment, leased or loaned, complied with their agreements, and unload tank cars and transport trucks and promptly report their arrival and return. Any demurrage or storage charges accruing because of negligence of agent was to be paid by agent, who shall solicit orders and make sales, including deliveries to the trade, at prices established by the oil company and take receipts therefor, and report the delivery and shipment of stock on forms furnished by the company, and make shipments and transfers as requested, make reports in accordance with agreement and general instructions from the company's division manager at Ponca City, collect and promptly remit for all sales, and any credit sales made without authority of company's credit division shall be at agent's sole risk.

In consideration for the performance of the agreement by agent the company agreed to pay agent certain commission on sales, as set forth in the agreement.

It was further recited therein that the company will furnish all forms which in its opinion were necessary and furnish such operator's supplies as should be agreed upon prior to the agreement.

The company was to keep its bulk station and equipment in good repair, except as otherwise noted, furnish insurance on the buildings and equipment of the station and merchandise stock, and pay exchange on remittances. The agent to keep a record of all sales made and of transactions by agent

in performance of the agreement, which records shall be delivered to the company upon termination of the agreement, and the company to have the right at all times to audit, inventory and check its products and equipment; the company to furnish the paint and the agent, at his expense, will furnish the labor necessary to keep the loaned equipment and station equipment, except storage tanks and buildings, painted and in good condition and repair and report to the division manager any major work or repairs necessary to keep the property in good condition. Agent agreed to pay all ordinary expenses incurred in operation of the station and in performance of the agreement shall furnish at agent's expense suitable automotive equipment with which to perform the agreement and pay maintenance of the same, including gasoline and oil, and pay utility bills, telegrams and postage in the conduct of the station. No passenger other than an employee of the agent or agent of the company shall be carried on the automotive equipment while engaged in performance of the agreement. Agent accepts and assumes exclusive liability and agrees to indemnify the company against all contributions and taxes for unemployment insurance or compensation, old age pensions and Workmen's Compensation imposed by law, and required to be paid by employer, and shall comply with such laws as such employer, and furnish the company evidence of such compliance. Agent shall not conduct any business at or from the bulk station without company's written consent, nor without company's approval place any signs on the premises, and company reserves the right to contract with third parties for erection of advertising signs and billboards on station premises and receive all income therefrom. All persons employed by agent to assist him in connection with the business shall be employees of the agent and shall not be considered agents of the company and they shall be hired, paid and discharged by agent, and under his control, and their duties and manner of performance under his direction. It provides that the agreement may be cancelled by either party upon ten days written notice or may be terminated by the company immediately and without notice if agent fails in any respect to comply with the agreement.

The plaintiff put in evidence eight letters dated in 1954 addressed to the defendant Johnson from the company and signed by parties who are designated therein as Division Marketing Clerk, Marketing Credit Man, Marketing Stock Clerk, in which Johnson was requested to remove certain company equipment located at Mounds, and a similar request as to equipment at Beggs. Three letters refer to a balance due from named customers and request agent to collect the amounts due. Two letters of different dates direct Johnson to express to the company at Ponca City a sample of the gasoline from the next transport or tank car received from the Phillips Petroleum Company. One letter refers to a change of dealer at Mounds and requests recommendation as to what equipment should be sold to him.

The defendant Johnson testified in part that company auditors checked the stock in his warehouse every five or six months, that the District Sales representative of the company called at periods of one to two months to assist in making sales, that the warehouse telephone was listed in the telephone directory "Continental Oil Company", also as J. C. Johnson Butane & Propane Company; that he sold Goodrich tires; that he owned the truck which was involved in the collision and employed and paid the driver, Mr. Ransom, and that the defendant company had nothing to do with the manner or method of the truck operation, that the tank on the truck belonged to the oil company and its name appeared on the truck, and that he sometimes made delivery of oil on a flat truck which he owned—it was easier to handle. The defendant oil company says the bulk sales contract is unambiguous and the evidence undisputed, and asserts that the question of the relationship between the company and its agent Johnson was a question of law for the court, and that it should not have been submitted to the jury.

The case of Fairmont Creamery Co. of Lawton v. Carsten, 175 Okl. 592, 55 P.2d 757, 758, with other decisions, is cited as supporting defendants' contention. The 6th syllabus in the case reads:

"Where the evidence with respect to the relation under investigation is sufficient to establish the existence of some relation, and is reasonably susceptible of but a single inference, the question of what relationship is shown to exist is purely a question of law."

■ It will be noted from the syllabus that the question of the relationship between the parties is one of law only when the evidence is reasonably susceptible of but a single inference. 56 C.J.S., Master and Servant, § 3(2), p. 47, states:

"A contractee-independent contractor relationship presupposes a contract between the parties, and, in determining whether the relationship between the parties is that of master and servant or contractee and independent contractor, resort must be made in the first instance to the contract between the parties. If there is no express contract or if the contract is ambiguous or doubtful, the conduct of the parties and all of the surrounding circumstances may be looked to in determining the relationship of the parties. Moreover, it has been held that in determining the relationship of the parties, their conduct and the surrounding circumstances may be examined, even though there is an express, unambiguous contract, since to hold otherwise would be to invite masters to avoid their liabilities and responsibilities by paper contracts which do not express the true relationship between the parties, but it has been held that this rule applies only where the rights of third persons are involved * * *."

■ Among cases cited in support of the text, also relied on by defendant, is the case of Getman-MacDonell-Summers Drug Co. v. Acosta, 162 Okl. 77, 19 P.2d 149, 150 which holds:

"An independent contractor is one who, exercising an independent employment, contracts to do a piece of work according to his own methods, and without being subject to the control of his employer except as to the result to be accomplished.

"As a general rule, the line of demarcation between an independent contractor and agent or servant cannot clearly be drawn by the courts. In passing on the question as to whether or not one is a servant or agent or an independent contractor, this court will determine the question upon the facts peculiar to each case."

In Magnolia Petroleum Co. v. Pierce, 132 Okl. 167, 269 P. 1076, 61 A.L.R. 218, it was held that the written contract between the oil company and its agent relating to the sale of company products at a bulk sales station created as a matter of law the relation of master and servant between the company and the agent and agent's employees. The language of the bulk sales contract in that case differed from the contract in the present action to such an extent as to justify a distinction between the holding in that case and our holding in the present one.

In Gulf Refining Co. v. Brown, 4 Cir., 93 F.2d 870, 874, 116 A.L.R. 449, annotation, the court there, in discussing the liability for negligence of persons employed by agent, stated:

"It is clear that a principal may not escape liability to third persons for the torts of a subagent, appointed by his agent with his consent, merely by entering into a contract with his agent under which the latter assumes sole responsibility for the subagent's conduct. The responsibility of the principal to third persons imposed by law may not be so lightly disposed of."

In Keith v. Mid-Continent Petroleum Corp., Okl., 272 P.2d 371, 375, the opinion sets forth the pertinent portions of a bulk sales contract there involved. The issues in that case, including the question of rela-

tion of the contracting parties, was submitted to the jury, who found in favor of the defendant. This court, on affirming the trial court on appeal, stated in the opinion in part as follows:

"Thus plaintiff advances his first contention that the trial court erred in submitting for the jury's determination the construction of an unambiguous, undisputed written contract. We have recognized this as the general rule so often as scarcely to require supporting authority. [Citing cases.] We believe, however, that consideration of one phase of the general rule demonstrates the lack of persuasion in plaintiff's argument. This is the recognized principle that the question of the relationship created by a contract between the parties thereto is to be determined by the trial court only if there is no dispute as to its terms, *or if but one inference can be drawn from the evidence* in regard thereto."

And in the syllabus holds:

"The question of what constitutes an independent contractor may involve only a question of law, but ordinarily it involves a mixed question of law and fact. Where the evidence with respect to the relation is oral, and is sufficient to establish the existence of some relation and is uncontradicted, and is reasonably susceptible of but a single inference, it is a question of law. If the evidence is conflicting, or is such that different deductions may reasonably be drawn, leading to different conclusions as to what relation is established, it is a question of fact, in the sense that the triers of the facts must determine the facts and draw the inferences and make the deductions; but even in such case a certain legal principle must be applied to the facts as found, and a question of law is involved, so that the ultimate question of whether a person is an employee or an independent contractor under certain facts involves a question of law."

The case of Cook v. Knox, Okl., 273 P.2d 865, 868, grew out of a motor vehicle collision and involved the question of whether Cook, the driver of the truck, was a servant or independent contractor, which issue was presented to the jury, who found the relationship between defendants to be that of master and servant. The case involved a written contract between the parties defendant, and in the opinion it is stated:

"We are of the view and so hold that the question as to whether Cook was the agent and employee, or was an independent contractor at the time of the accident was, under this record, a disputed question of fact, and that the issue was properly submitted to the jury under correct statements of the law."

█ The first syllabus of the opinion holds:

"Where parties have entered into a written contract relative to services to be rendered by one to the other, and where under the provisions of the contract the minds of reasonable men may differ as to whether the relationship established is that of master or servant, or contractor and independent contractor, determination of the relationship between them is for the jury under proper instructions by the court."

█ We have considered the written bulk sales contract between the defendants, Continental Oil Company and the Agent Johnson, also the uncontradicted evidence relating to their operations thereunder, also the decisions cited and relied upon by the respective parties and conclude and hold that more than one inference may be drawn from the evidence as a whole in regard to the relationship between the defendants, and that under the provisions of the contract the minds of reasonable men may differ as to whether the relationship was that of master and servant or independent contractor, and conclude and hold that the trial court did not commit error in submitting to the jury for determination the issue as to the relationship between the defendants.

The defendants, J. C. Johnson and William Aud Ransom, present as their first ground for reversal of the judgment the following proposition:

"To compel a litigant to try his controversy before the issues have been made up ten days is ground for reversal."

Title 12, § 666, O.S.1951 provides that when the issues in a case are made up the cause shall be placed on the trial docket and shall stand for trial at such term ten days after the issues are made up, and shall, in case of default stand for trial forthwith * * *. The case of Boorigie v. Boorigie, 130 Okl. 131, 265 P. 761, holds that to compel a party to proceed to trial in violation of the statute above referred to is prejudicial error.

The record in the present case shows that all parties defendant filed their answers in the case by February 7th and that on February 9, 1955 replies in the form of general denials were filed. The case was set for trial for February 21, 1955, which date was ten days after the issues were made up. On February 12th the defendant Ransom, by written motion, moved the court to continue the trial of the action to the next jury docket on the ground that the case was not at issue and would not likely be at issue on the date assigned for trial. Such motion was subsequently overruled. On February 12th the defendant Ransom, without leave of the court, filed written motion asking the court to require his co-defendant German to make his answer more definite and certain, and the plaintiff filed motion to strike the Ransom motion. On February 14th the motion to strike was denied and an order was entered sustaining the motion of the defendant Ransom to require his co-defendant to make his petition more definite and certain without prejudice to trial. Thereafter, on the same date, the court, upon notice to respective counsel, vacated and rescinded the previous order requiring the defendant German to make his answer more definite and certain and entered an order sustaining the motion of the plaintiff to dismiss and strike the said motion of the defendant Ransom.

The filing of the motion by the defendant Ransom to require his co-defendant German to make his petition more definite and certain after the issues were made up, which motion was later stricken, did not change or affect the issues as previously made up, and did not change or extend the time from or after which the cause shall stand for trial, as provided by Title 12, § 666, O.S.1951.

Applicable to the question here under consideration is the principle and rule announced in Chadd v. DeFlorin, 180 Okl. 356, 69 P.2d 323, which holds:

"The filing of a reply in the form of a general denial does not raise any new issue, nor is it cause for a continuance under the provisions of the statutes that actions shall not be set for trial before the expiration of 10 days after the issues are made up."

The record does not sustain the defendants' contention that the case was tried earlier than 10 days after the issues were made up.

The defendants, Johnson and Ransom, for their second proposition, assert that the court erred in admitting the testimony of the witness Laughlin, which proposition is presented under subsections "A" and "B". Under the first, subsection "A", the defendants say they are cognizant of the court's holding in Jones v. Eppler, Okl., 266 P.2d 451, and St. Louis S. F. Ry. Co. v. King, Okl., 278 P.2d 845, wherein standard life and annuity tables were held admissible in evidence in personal injury cases and defendants say they believe that the allowance of the costs to purchase an annuity presents to the jury an improper and prejudicial measure of damage, and urges this court to reappraise its prior rulings and follow certain British and Canadian decisions and others from this and other jurisdictions.

In the opinion in Jones v. Eppler, supra, in approving the use of annuity tables, it was stated [266 P.2d 456]:

"While, as suggested by defendants, this Court has never passed upon the question of admissibility of annuity tables in personal injury cases and the decision on this point will be one of first impression, yet the weight of authority is that standard life and annuity tables, no matter where found, if properly established and authenticated, are admissible in evidence in personal injury cases of permanent partial (or total) destruction of the earning capacity of the person negligently injured."

Such holding was approved and followed in the later case of St. Louis S. F. Ry. Co. v. King, supra. We see no reason to depart from the previous and recent holding of this court on the matter.

The trial court in the present action, in its instructions, advised the jury that mortality tables had been introduced as evidence in the case, but advised them that such tables were not binding on the jury, and further stated that they were made from a tabulation of results of combined and actual experience of American life insurance companies, and otherwise referred to the basis thereof.

Under subsection "B" said defendants contend that the witness Laughlin did not adequately identify the tables of mortality or annuity. The witness testified, in substance, that he had been a life insurance agent for several years and was acquainted with and had experience in planning and selling life annuities, that he had life insurance tables which figured the period of life a man aged 34 would live, and stated that according to the standard table of mortality the life expectancy would be 34.-29 years. He was asked:

"Q. By that, Mr. Laughlin, is that the table that the Life Insurance Company, in writing a Life policy, would base their premiums on? That they would gamble on a man living that many years, at age thirty-four (34)? A. That's right. Over a large group, that is, the average."

The witness further testified:

"This is the Commissioners' Standard Ordinary, which about ninety-five per cent (95%) of the companies— All companies, that is of any size whatsoever, are listed here. And probably ninety-five (95%) per cent of them are using this table. * * * That's the standard table, at this time."

Witness was asked what the insurance company would charge plaintiff at age 34 to buy a policy which would pay him $350 a month for his expected life span. He stated that it would cost in his company $92,105, and named three other insurance companies who he said would charge more for such a policy.

At the conclusion of the testimony objection was made thereto on the ground it was not the proper measure of damages, and motion was made to strike the entire testimony, which motion was denied. No objection was made to the qualification of the witness to testify concerning the matter inquired about, nor was any objection made to his testimony referring to the life insurance book or tables of mortality without introducing the tables in evidence, of which they now complain.

In the case of St. Louis S. F. Ry. Co. v. King, supra [27 P.2d 850], it is stated in the opinion:

"Defendant's third contention that the court erred in permitting an actuary testifying for plaintiff to testify as to the present value of a given sum, basing his calculation partially on various mortality tables is without merit."

We conclude that the standard life annuity tables of mortality and rates were sufficiently established, and we find no material error in the admission of the testimony of the witness Laughlin.

Defendants Johnson and Ransom, for their third proposition, complain of

the admission of certain testimony of Frank Grall, a State Highway Patrolman, who investigated the accident shortly after it occurred. The brief of the defendants contains exerpts from the testimony of the witness which they say was incompetent and invaded the province of the jury. Upon reading the entire testimony of the witness we find that most of the testimony complained of in the brief was not objected to at the trial, and such as was admitted over objections was competent and admissible. Hadley v. Ross, 195 Okl. 89, 154 P.2d 939 and Maben v. Lee, Okl., 260 P.2d 1064, with other cases are cited by defendants as announcing the law applicable to the present question. The principal factor or error which required a reversal of the judgments in the two above cases was that the testimony of the Highway Patrolmen who investigated the accidents there involved was based at least in part upon information received from third persons, and the witnesses were permitted to express their opinions as to which of the parties involved was responsible for the accident.

The record in the present case does not show a similar situation with respect to the testimony of the witness Grall, and does not come within the rule announced in the above cases. Furthermore, upon cross-examination of the witness Grall the defendant, Continental Oil Company, introduced in evidence a certified copy of the written report made by the patrolman to the State Highway Department, which report included a diagram showing the highway intersection and the points of impact between the vehicles involved, and a statement relative to the position of the vehicles and their movements immediately prior to and at the time of the collision. When the report was offered in evidence counsel for the defendants Johnson and Ransom stated "I have no objection".

The defendants also complain of an answer given by a witness, M. T. Hill, a police officer in the City of Tulsa for 26 years, assigned to the Traffic Department, who testified that he had taken special training courses in traffic and safety engineering work, including a course at Northwestern University Traffic Institute, and had taught such a course at O. U. and A. & M. He was asked to state, in his opinion, how fast a certain one of the vehicles involved in the accident was traveling. An objection was made to the same on the ground that it called for a conclusion of the witness and invaded the province of the jury. The witness answered:

"Judging from the surface, the damage done to both, and the angle at which they struck, plus the additional information of seventy-five feet (75') of skid marks, I would say that the automobile lost, in the skid mark and the damage, a minimum of sixty (60) miles an hour and a maximum of sixty-five (65)."

The witness qualified as a traffic engineer, or highway safety engineer, and an expert as to the speed of a motor vehicle traveling on the highway, and his answer to the question propounded was based upon skid marks made by the automobile and other physical facts which he observed. The applicable rule on the present question is stated in Ruther v. Tyra, 207 Okl. 112, 247 P.2d 964, 965, which holds:

"Opinion evidence of a duly qualified expert as to the speed of a motor vehicle, traveling upon a highway, based on skid marks on the highway and other physical facts, is admissible.

"Whether or not the qualifications of a witness with respect to knowledge or special experience is sufficiently established is a preliminary question for determination by the trial judge, and his ruling thereon will not be disturbed in the absence of a showing of abuse of judicial discretion."

The fourth proposition presented by defendants Johnson and Ransom is that reversible error was committed in allowing plaintiff to obtain testimony of the defend-

ant Ransom in an attempt to show his incompetency to drive the truck.

Ransom was called as a witness by the plaintiff and upon direct examination denied that he made any statement immediately after the accident of August 9th to the effect that he had made no deliveries for a long time because of injuries, and did not remember making any statement that he was unable to drive a truck. He was asked:

"Q. You had been laid up for quite a long time, haven't you, from injuries in an accident that you had sometime previous to this one?"

Whereupon counsel for Ransom and Johnson, out of hearing of the jury, moved the court to declare a mistrial by reason of the question propounded, leaving an inference in referring to a prior accident not connected with the litigation. In denying the motion the trial judge stated:

"They have a right to show that this man was not a fit driver * * * I don't know anything to do, but when it is over if you don't prove it, explain to the jury and tell them to ignore it. But I think you have a right to try to prove it."

The witness Ransom made no answer to the question as originally propounded, and after the ruling of the court thereon request was made of the reporter to read the question, which she did, as follows:

"Q. You had been laid up for some time before this accident? A. Yeah."

The witness, on further examination, testified that he had not driven a truck during the period from May 22nd to August 5th, that he started driving Thursday before the accident on Monday, August 9th. He was asked the nature of the injuries from which he suffered during the period he was laid up and stated that he had about ten ribs broken in two different places and his lungs punctured. At the conclusion of the testimony of the witness the defendants, Continental Oil Company, Johnson and Ransom, renewed their motion for a mistrial because of the prejudicial effects of the question propounded. In overruling the motion the court stated:

"I am going to instruct the jury with reference to this witness' testimony" and orally addressed and stated to the jury as follows:

"Ladies and Gentlemen of the Jury. I want to give you some explanation, and then I want to orally instruct you on one matter. We have a rule that if an agent or servant is an unfit person to drive and the master knows it, that he is responsible on it. * * * In this case, I am ruling that the Plaintiff has not proved that this Defendant was not a competent driver. So, therefore, any evidence given by this Defendant about a previous accident or about the time that he was not driving would have nothing whatsoever to do with this lawsuit. So, the Jury, must wipe your minds clean of that testimony. In other words, you and I just consider that it was never testified to. And it will have nothing to do with this lawsuit. I hope I have made myself clear. Any questions by the Jury? Are there any of you who do not understand what I mean by that? * * *"

We are unable to agree with the defendants' argument to the effect that the testimony of the witness Ransom concerning a previous accident was improper, prejudicial, and was not cured by the statement of the court, and that they were denied a fair and impartial trial. In the opinion in Coker v. Moose, 180 Okl. 234, 68 P.2d 504, 505, it is stated:

"The liability of an owner of an automobile, who knowingly permits a careless, reckless, or otherwise incompetent driver to operate his automobile, for damages resulting therefrom, is recognized in this jurisdiction."

See also McCarley v. Durham, Okl., 266 P.2d 629, 630.

The testimony of the witness Ransom concerning the extent of his previous in-

juries was admitted by reason of the plaintiff's allegations that Ransom was physically unable to operate the truck at the time of the accident here involved. The testimony in question did not disclose the cause or nature of the previous accident, and it is not pointed out or apparent wherein the admission of such evidence was erroneous or prejudicial, especially in view of the action of the trial court, which held that such evidence was insufficient to establish that the defendant Ransom was not a competent driver and withdrew the evidence from the consideration of the jury and instructed the jury that the court had so held, and admonished and directed the jury to disregard such testimony, and that it would have nothing to do with the action. It does not appear that the jury failed to understand the instruction or failed to comply therewith.

McCarley v. Durham, supra, holds:

"The fact that evidence properly admitted as tending to show prior recklessness of a defendant's minor child and co-defendant must later be disregarded by the jury in its consideration of plaintiff's case against the minor defendant alone, because of the sustaining of a demurrer of the parent to the evidence against him upon the ground of failure to prove he had knowledge of recklessness when permission to drive his automobile was given, is not necessarily reversible error, especially where the trial court instructed the jury to not consider such evidence, and it does not appear that the jury disregarded the instruction or was mislead, and where other evidence of similar tenor was introduced without objection."

The holding in that case is applicable to the record and question here involved, and the fact that there was no other evidence of similar tenor in the present case does not otherwise change the rule in its application to the present action.

The judgment of the trial court is affirmed.

JOHNSON, C. J., and WELCH, CORN, DAVISON, BLACKBIRD and JACKSON, JJ., concur.

WILLIAMS, V. C. J., and HALLEY, J., dissent as to Continental, concur otherwise.