GRONINGER & KING, INC., a Corporation, and William T. Burton, Jr., Plaintiffs in Error,

v.

T. I. M. E. FREIGHT, INC., a Corporation, Defendant in Error.

No. 40136.

Supreme Court of Oklahoma.

July 9, 1963.

Looney, Watts, Looney, Nichols & Johnson, Oklahoma City, for plaintiffs in error.

Ross, Holtzendorff & Hurd, Jay R. Bond, Oklahoma City, for defendant in error.

PER CURIAM.

Plaintiff, T.I.M.E. Freight, Inc., brought this action against the defendants, Groninger & King, Inc. and William T. Burton, Jr.,

to recover for the damages to its tractor, van and cargo caused by the negligence of the defendants. The plaintiff, in substance, alleges in its petition that on July 2, 1959, James L. Cloud, an employee of the plaintiff, was driving a 1957 White tractor, pulling a semi-trailer east on Oklahoma State Highway No. 7 in Comanche County, Oklahoma, approximately 9 miles east of Lawton, Oklahoma. The defendant, William T. Burton, Jr., was driving a pickup truck owned by the defendant in a westerly direction on said highway at said time and place. Plaintiff's truck and defendants' pickup were approaching a narrow bridge and immediately in front of the defendants' vehicle, proceeding in the same direction as the defendant, was an automobile operated by Mrs. Jerrelene Rogers. The petition stated that defendants' pickup proceeded to the left of the center of the roadway, at a high and dangerous rate of speed, to-wit, 70 miles per hour, striking the Rogers automobile and forcing the plaintiff's vehicle to its right on the shoulder of the highway, which was soft as a result of recent rains, and causing plaintiff's vehicle to turn over, resulting in the damages alleged. The answer of the defendants, in effect, was a general denial, contributory negligence and unavoidable casualty.

The case was tried to a jury, which at the conclusion of the evidence returned a verdict for the plaintiff in the amount of $10,-968.56.

Plaintiff's driver testified that as he approached the narrow steel bridge going 45 to 50 miles per hour he saw a car coming from the opposite direction and he further testified, to-wit:

"Q. Now, what, if anything, did that car do?

"A. That car, as it began to approach the bridge, I was entering the bridge and the car was coming meeting me, I'll put it that way, and as I entered the bridge, this car meeting me, she slowed ·down, I could tell it was a lady, she slowed down to give me an opportunity. She slowed down, and it looked like she started to decide whether she could get across the bridge or not and then she slowed down again. And whenever she did that, at the time I was going through the bridge, and she was fairly close to the bridge.

"And about that time, I picked up this GMC pickup coming up, it was behind her and coming west, and he passed her over in my lane, and here he come at me. I don't know whether he seen me or what happened, but when he got up close, he seen that he was going to have a head-on with me and he turned to her. In the meantime, I am traveling, going east all of that time. I turned to my right to avoid the accident if possible, * * *

"Q. (By Mr. Ross) Now, what—what happened then?

"A. Well, I turned to my right just as hard as I could turn, and I went down this roadbed.

"At about the present time that I turned to my right to get my tractor clear of the bridge, the pickup hit the Oldsmobile, and it was—just happened right down beside of me. He was still in my lane or where I would have been.

"And, then, I went down the shoulder and I fought the truck down the shoulder until I got it back up on the highway, and I thought I was going to make it. I went across the highway, and being in the mud and slush, my tires was all wet and muddy and slick. And my trailer, instead of straightening out on the highway, it went plumb across, and my tractor was up on the highway and my trailer was down a 15-foot embankment, which we have later figured, and I fought it for quite a good distance, whatever distance they say, until it turned over."

He did not testify concerning the speed of defendants' pickup truck.

The driver of the automobile testified in effect that she saw the plaintiff's tractor coming and slowed her car to about 20 miles

an hour to allow the tractor to cross the bridge; that the tractor did cross the bridge and she continued going at a speed of 20 miles an hour and did not see the pickup truck until she heard the brakes screeching and glanced up through the rear view mirror. The car she was driving was hit by the pickup truck in the left rear and knocked completely across the bridge. She did not testify concerning defendants' truck's speed.

John Duke, a witness for the plaintiff testified that he was a trooper with the Oklahoma Highway Patrol and had been for 15 years, stationed at Lawton about 14 years. He then testified in substance, that he arrived at the scene of the accident about 7 P.M. of the date of the accident; that he found three vehicles there, describing their location and position. He stated the bridge was 18 feet wide and 63 feet long; that there was 52 feet of tire skid marks made by the pickup on the south portion of the highway before the pickup hit the automobile at a point 56 feet east of the bridge; that there were 43 feet more of skid marks to the bar ditch 12 feet east of the bridge where the pickup came to a stop. At this point the further proceedings which are material to the issue to be decided are in part as follows:

"Q. (By Mr. Ross) Can you, on the basis of what you saw there and your investigation that you made there at the scene by these vehicles, including the damage to them and the lay of the land and the various marks that you saw, can you approximate the speed of the GMC pickup?

\* \* \* \* \* \*

"Q. (By Mr. Ross) What opinion did you form?

"MR. JOHNSON: To which question we are going to object at this time, Your Honor, as to how he qualified the witness and the qualifications of what he is basing this estimate of speed on.

"THE COURT: Overruled and exceptions allowed.

"Q. (By Mr. Ross) You may answer.

"A. I did, to my satisfaction, come to a speed, yes.

"Q. What speed did you or what conclusion did you come to in regard to his speed?

"A. Well, I list his speed as 70."

The defendant driver testified that his speed prior to the accident was about 50 miles per hour.

On appeal the defendants contend that the trial court admitted testimony over their objection upon matters within the scope of the common knowledge and experience of mankind and that the further attempt of the expert witness to conclude the speed of a vehicle without proper qualifications as to the many factors involved in arriving at said conclusions made cross-examination impossible to show the many deviating factors involved from the application of "average" factors to the physical findings at the scene of accident. As authority they cite Washita Valley Grain Co. v. McElroy, Okl., 262 P.2d 133, where in the third paragraph of the syllabus we held:

"Where the ultimate fact to be determined is whether a party has been guilty of negligence in an automobile collision, and the facts involved and the conclusions to be drawn therefrom involve no special question of science or skill but may be understood by men of ordinary experience and knowledge the admission of expert or opinion testimony as to whether a party has been guilty of negligence is error since it invades the province of the jury."

In the above case an expert witness was asked "From your examination as an expert do you find any negligence on the part of the driver of the McElroy car in this case?" His answer was he did not. That was a question for the jury to decide, as it was a conclusion of ultimate fact and invaded the province of the jury.

The defendants in the case at bar contend that the testimony of the patrolman that the pickup was traveling 70 miles per

hour together with the fact that the speed limit on such highway was 65 miles per hour was an opinion that said driver was guilty of negligence per se in the light of the instruction of the court that a violation of State law was negligence per se. And further the same opinion testimony of the speed of 70 miles per hour when taken in the light of Instruction No. 9 setting forth the legal speed limit of 65 miles per hour gave weight to the opinion testimony of the highway patrolman far beyond that which was proper in view of the offhandedness and concluded opinion as to the speed of 70 miles per hour without the background for qualifications as to how this opinion and conclusion was reached.

The witness Duke did not testify that the defendant was guilty of negligence. That question was left to the jury to decide under proper instructions of the court.

The questions presented for determination in this case are whether John Duke, Highway Patrolman, qualified as an expert witness and whether his testimony was admissible.

■ In Ruther v. Tyra, 207 Okl. 112, 247 P.2d 964, we held:

"Whether or not the qualifications of a witness with respect to knowledge or special experience is sufficiently established is a preliminary question for determination by the trial judge, and his ruling thereon will not be disturbed in the absence of a showing of abuse of judicial discretion."

See, also, Continental Oil Co. v. Elias, Okl., 307 P.2d 849 and Tuck v. Buller, Okl., 311 P.2d 212, 66 A.L.R.2d 1043.

■ There was no abuse of discretion by the trial court in the instant case. The evidence showed that the expert witness had completed the required course of study to qualify as a highway patrolman and had attended additional refresher courses on investigation as well as other parts of the law. He also had fifteen years experience in making investigations for the State of Oklahoma as a highway patrolman.

■ This witness and others described the damage to the vehicles, the condition of the roadway and the marks left by the vehicles. Based on these facts, particularly the skidmarks left by defendants' vehicle, the highway patrolman made his estimate of speed of defendants' pickup truck. Such testimony was properly admitted into evidence.

In Andrews v. Moery, 205 Okl. 635, 240 P.2d 447, we held in the first paragraph of the syllabus:

"Opinion evidence of expert as to speed of truck involved in accident based upon length of skid marks is admissible."

■ In Ruther v. Tyra, supra, we held in the first paragraph of the syllabus:

"Opinion evidence of duly qualified expert as to the speed of a motor vehicle, traveling upon a highway, based on skid marks on the highway and other physical facts, is admissible."

And in the body of the opinion we said:

"While a layman knows that a speeding car will produce skid marks upon a pavement when brakes are applied, and while it is a scientific fact that the speed of a motor vehicle can be closely approximated from the skid marks and other physical facts at the scene of the collision, the method of computing such speed from the physical facts is not a matter of common knowledge. Such computation can be made only by an expert who has given special study to the subject."

From an examination of the record herein we hold that the trial court did not abuse its discretion in holding that John Duke, patrolman, was properly qualified to testify as to the speed of the pickup truck.

Affirmed.

The Court acknowledges the aid of Supernumerary Judge N. S. CORN in the preparation of this opinion. After a tentative opinion was written, the cause was assigned to a Justice of this Court. Thereafter, up-

on report and consideration in conference, the foregoing opinion was adopted by the Court.

BLACKBIRD, C. J., HALLEY, V. C. J., and JOHNSON, IRWIN and BERRY, JJ., concur.

DAVISON, WILLIAMS and JACK-SON, JJ., concur in result.