Gertha J. GRAVES, Plaintiff in Error,

v.

Dwayne G. GRAVES and Raymond C. Graves, Defendants in Error.

No. 42509.

Supreme Court of Oklahoma.

Sept. 29, 1970.

Berry & Berry, by Howard K. Berry, Jr., Oklahoma City, for plaintiff in error.

Bill F. Chastain, Oklahoma City, for defendants in error.

BLACKBIRD, Justice.

This action grew out of a collision between a 1955 Model Ford Sedan driven by plaintiff in error, hereinafter referred to as "plaintiff", and a 1957 Model Mercury Sedan, owned by the defendant in error, Raymond C. Graves, and driven by his minor son, the defendant in error, Dwayne G. Graves, hereinafter referred to collectively as "defendants", at about 7:30 o'clock a. m., on a fair morning in September, 1965. Plaintiff and young Graves were driving in opposite directions at a point approximately 7 miles east of Crescent on State Highway 74–C, plaintiff proceeding east and said defendant west. As the two autos were about to pass each other, they collided almost head-on. The front ends of both vehicles were extensively damaged and somewhat entangled or locked together, when the reciprocal force of their forward movement stopped them, facing each other and entwined diagonally, traversing the traveled portion of the road.

In the action for damages for both property and personal injuries which followed, each party alleged negligent driving on the part of his adversary, as the proximate cause of the collision. One respect in which each charged the other with being negligent was in permitting his or her vehicle to cross the center line of the road, so as to come into contact with the other vehicle. The question of the location of the vehicles' point of contact and impact, with reference to the center of the road, consequently became a key issue at the trial. The testimony of the two drivers, the only eyewitnesses to the collision, was of little, or no, assistance in answering this key question.

After testimony indicating that the highway involved traverses rolling hills, and that the collision occurred at or near the crest of one of these hills, plaintiff's only testimony as to the part of the road upon which her car and that of her adversary driver were traveling immediately previous to the collision was as follows:

"Q Now, when you first saw this vehicle, about how far from you was it?

A Oh, approximately 200 feet.

Q And when you saw it, just tell us what you did.

*   *   *   *   *   *

A As I drove on the car was continuing to come towards me on the south side of the road, so after he got very close to me I veered a little bit to the left, which is the north side of the road, and this car veered also towards the north side of the road—

Q The same direction you had veered?

A The same direction that I had veered, yes, and then I veered back towards the south and this car did, too, and just as he veered back we crashed.

Q All right; Did your vehicles stop right there where they hit?

A Yes, they did."

On cross-examination, plaintiff testified, in part, as follows:

"Q Now, Ma'am * * * are you absolutely sure the first time you changed direction of your vehicle that you veered to the left or to the north, is this your testimony?

A The first time I veered, I veered to the north, yes.

*   *   *   *   *   *

Q Ma'am, I will ask you if on October 6th, 1965, if you gave a statement to an investigator by the name of Mr. Rudkin in front of a court reporter, * * * and I'll ask you if on that date if you * * * told a story different than what you have told here today?

*   *   *   *   *   *

Q Ma'am, I'll ask you if this question was asked you and if you gave this answer:

'Q Just what happened? * * *

'A Well, I was traveling to the east side of the road, and it is a dirt road, and this car came up the hill on the left side of the road.

'Q What would that be, on your left or his left?

'A Now, wait a minute, let me get this straight—I am going east and he was going west, and I could see that he was too far on the right side of the road so I attempted to get over just a little bit to see if he would notice what I was going to do, so I pulled to the right and he came up about the same time so I pulled back to the left, and I was traveling east and we just met up.'

*   *   *   *   *   *

Q Are you denying that you made that statement?

A I don't know, I just don't know.

*   *   *   *   *   *"

When the other driver, Dwayne Graves, took the witness stand for the defendants, he denied that he remembered any of the facts of the accident, but defendants called as one of their other witnesses Mr. Paul N. Johnson, a member of the Oklahoma Highway Patrol, who testified that he was notified of the accident at approximately 7:30 a. m., of the morning it occurred, and that he arrived at its scene "around 8:05". This Patrolman's direct examination then continued as follows:

"Q All right, Sir, now, I will ask you if you, upon your reaching the scene of this accident, made an investigation there at the scene of the accident (1) to determine the point of impact of these vehicles?

A Yes, Sir, I did investigate this accident.

Q I'll ask you if you made measurements there on this road to see where the point of impact was as to the center of the road?

A Yes, Sir, I did.

\* \* \* \* \* \*

Q Tell us what your investigation entailed, Officer.

A Well, the roadway is a dirt-gravel road, and the traveled portion of the road was 25 feet.

\* \* \* \* \* \*

Q Did you find any skidmarks laid down by either vehicle out there, Officer?

A Yes, Sir, both vehicles laid down skidmarks and I measured both sets, and the 1955 Ford which was traveling west laid down 92 feet of skidmarks.

\* \* \* \* \* \*

A And the other vehicle which was traveling east driven by Dwayne G. Graves laid down 34 feet of skidmarks before the point of impact.

Q \* \* \* was this flat terrain there or uphill or downhill or what was the terrain there?

A \* \* \* the 1955 Ford was going up more of an incline than the other vehicle, but both of them hit at the crest of this hill.

\* \* \* \* \* \*

Q Now, Officer, I will ask you if at my request you have gone back to the scene of this accident since that time and checked to see how far these two drivers could have observed each other as they approached each other out there?

A Yes, Sir, I did go back.

Q All right, Sir, and what did you determine?

MR. BERRY: Your Honor, I object to this on the basis of it being an experiment and would be incompetent and irrelevant and immaterial.

THE COURT: Overruled.

MR. BERRY: Note our exception.

MR. CHASTAIN: You may answer the question, Sir.

A When I went back to the scene, the closest that either driver could have seen one another would have been 200 feet, and that is giving them plenty of leaway.

Q Now, Officer, I'll ask if based upon your investigation and the skidmarks and the debris left there at the scene of the accident if you were able to determine where the point of impact was as between these two vehicles?

A Yes, Sir, both vehicles—

MR. BERRY: If the Court please, may I ask the officer a question?

THE COURT: Proceed.

Q (By Mr. Berry) Officer, in arriving at this opinion did you take into consideration the damage to the vehicles?

A Yes, Sir.

\* \* \* \* \* \*

Q Have you ever worked in a bodyshop?

A No, Sir.

Q Do you know about the weak parts of a car and the strong parts of a car?

A Well, I have never worked in a bodyshop.

\* \* \* \* \* \*

Q Have you had any special training in the law of physics or chemistry or medicine or metallurgy?

A No, Sir.

\* \* \* \* \* \*

MR. BERRY: Your Honor, we object to the opinion of the officer *as not being properly qualified.* (Emphasis added)

\*   \*   \*   \*   \*   \*

Q   Did you observe any debris or anything there on the roadway?

A   Yes, Sir, there was a headlight rim and some other scrap pieces, I don't remember just what.

Q   Was there dirt and mud knocked loose from the cars?

A   Yes, from underneath the vehicles.

Q   What else did you observe there, Officer? Tell us all the things that you observed that you took into consideration when you were deciding where the point of impact between these two vehicles was.

A   Well, both of these vehicles were still locked together, and there was no evidence that \* \* \* (they) had been moved from where they hit.

Q   Did the skidmarks lead right up to the rear of the vehicles, Sir?

A   Yes, Sir, they did.

\*   \*   \*   \*   \*   \*

Q   I'll ask you once again, Officer, based upon your investigation and the debris and the other things you observed at the scene there, did you determine where the point of impact was there on the roadway?

A   Yes, Sir, I did.

\*   \*   \*   \*   \*   \*

Q   Do you have an opinion, Sir?

A   Yes, Sir.

Q   What is your opinion?

    MR. BERRY: We *renew* our objection. (Emphasis added)

    THE COURT: Overruled.

A   It was one foot and ten inches north of the center of the roadway.

\*   \*   \*   \*   \*   \* "

In a supposed effort to support the allegations of her pleadings that the point at which the two vehicles collided was south, rather than north, of the center of the road, plaintiff's counsel interrogated her witness, Mr. Carl Gooch (who operated a dairy near the scene of the accident), as well as the Highway Patrolman, Johnson, and the defendant driver's father and co-defendant, Raymond Graves, concerning a photograph of an expanse of road, without vehicles on it, which had been marked "Plaintiff's Exhibit No. 8"; and, when plaintiff's counsel offered it for introduction into the evidence, both before plaintiff initially rested her case, and later toward the end of cross-examining the defendant, Raymond Graves, the court sustained defendants' objections to its introduction.

At the close of the evidence, after the case had been submitted to the jury under the court's instructions, a verdict was returned for the defendants, and judgment was entered exonerating both plaintiff and defendants from liability. After the overruling of her subsequent motion for a new trial, plaintiff lodged the present appeal.

Plaintiff's argument for reversal is advanced under three propositions. Under the last of these (Proposition III), she contends that the trial court erred in sustaining defendants' objections to the introduction of the aforementioned photograph she had caused to be marked "Plaintiff's Exhibit No. 8". With obvious reference to two spots, on the road surface, depicted in said black and white photograph (as distinguished from so-called "color" photographs), that appeared to be darker than the area around them, plaintiff's counsel say these spots represented "oil marks" at the scene of the collision, and that they indicate that the point of impact of the vehicles' collision was on the plaintiff's (south) side of the road; and that the trial court's ruling excluding this photograph from the evidence deprived her of valuable support for her theory that the collision occurred on her side of the road, rather than on the side of the defendant driver.

    ■   We find no merit in plaintiff's argument. Assuming, without deciding, that she may predicate error upon the court's subject rulings, without interposing exceptions to them immediately after they were

announced, the record shows that the photograph was never properly identified for introduction into the evidence. Plaintiff counsel argues that when he last offered it, the witnesses who had been interrogated about it "had collectively identified the photographs to authorize its admission into evidence." We do not agree. The transcript of their testimony shows that none of these witnesses testified that the photograph authentically, or accurately, depicted the sight of the collision on State Highway 74–C on the day on which it occurred; and none of the evidence revealed when, or by whom, the photograph was taken, nor identified the dark splotches appearing on said photograph as representing spots made on the road by oil which came out of either of the colliding automobiles.

Under plaintiff's first proposition, she argues that the hereinbefore quoted testimony of the Highway Patrolman, Johnson, as to the collision's point of impact was inadmissible, both because said Patrolman did not possess the qualifications of an expert in such matters, and also because it concerned a question of ultimate fact, whose determination was within the exclusive province of the jury. As to the latter, plaintiff represents that this witness testified to enough physical facts revealed by his investigation to enable the jury to make its own determination as to the location (in terms of the roadway's width) of the point where the vehicles made contact with each other, without any expression of opinion by the Patrolman.

While, after examining the evidence as a whole, and particularly the complete text of Patrolman Johnson's testimony (of which we have quoted only a part), we think the jury might have had difficulty in accurately determining on which side of the roadway's imaginary medial line the two automobiles collided, plaintiff's argument not only fails to demonstrate why the principles of appellate review applied in Miller v. Hickman, Okl., 359

P.2d 172, should not apply here, but she also fails to show that she laid any predicate in the trial of the case for a review of the question of whether or not this witness' testimony invaded the exclusive province of the jury.

As will be noted from the hereinbefore quoted excerpt from the record made during Patrolman Johnson's direct examination, plaintiff counsel's initial objection to the Patrolman's testimony as to the two vehicles' point of impact—and said counsel's subsequent *renewal* of said objection—pertained only to said Officer's qualifications as an expert witness. Consequently, it is only that objection that will herein be dealt with. In this connection, see the discussion in Parris v. McCallay, Okl., 424 P.2d 62, 67, and the first paragraph of the syllabus in McMillan v. Lane Wood & Company, Okl., 361 P.2d 487.

In plaintiff's argument concerning the trial court's alleged error in allowing elicitation of Officer Johnson's opinion as to the location of the two vehicles' point of impact, after her objection that he was not properly qualified to give such an opinion, she cites Braggs v. Reece, Okl., 357 P.2d 997, in support of her statement to the effect that an expert witness may testify to his conclusions based upon facts that are of such a scientific or technical nature that it would be impossible for persons of ordinary understanding and experience to draw proper conclusions from them. But she says Officer Johnson "was really not an expert." She does not dispute Johnson's testimony that he had been employed by the Oklahoma Highway Patrol for approximately 5 years; that he had been a Deputy Sheriff for 2½ years before that; that he went to "cadet school" at O. U. in 1962; that he had had two retraining, or refresher, courses; that he had received instruction from the Northwestern Institute; that one of his "main duties" since joining the Highway Patrol was the investigation of such accidents, or that he had investigated several hundred of them

and made written reports thereon. She does, however, point to Officer Johnson's testimony that he took the damages of the two vehicles into consideration in determining the collision's point of impact, and she poses the following question: "Isn't this the function of a scientist or metallurgist, or someone who has special and technical skills in the composition of metals and their stress points?"

Defendants call attention to the rule that whether a witness' qualifications are sufficiently established is a preliminary one for the trial judge and his ruling will not be disturbed in the absence of a showing of abuse of judicial discretion, citing Groniger & King, Inc. v. T.I.M.E. Freight, Inc., Okl., 384 P.2d 39, and other cases.

We have thoroughly examined the testimony of Officer Johnson, as it bears upon his qualification to testify as to the point of impact in a case like this; and it is our opinion that it sufficiently evidences special skill, knowledge, and experience as to such matters, that we cannot say the trial court abused his discretion in ruling, in effect, that Johnson was qualified as an expert witness on the point of impact in the present case. It therefore follows that said ruling constitutes no cause for reversal.

Under plaintiff's "PROPOSITION II", she argues that it was error for the trial court to allow Patrolman Johnson to testify, over her counsel's objection (as hereinbefore shown), about going back to the scene of the collision (at some unspecified time thereafter) to calculate how far away the two vehicles must have been from each other when each driver could observe the approach of the other. Plaintiff complains that no proper foundation for such an "experiment" was laid by showing when it was conducted or that, at that time, the conditions present were reasonably similar to those existing at the time the accident occurred. Plaintiff concedes that the admission of this testimony alone "is not sufficient to justify reversal * * *", but she contends that,

coupled with the other errors she has complained about, their combined effect was to deny her a fair trial. We do not agree. As will be noted from the hereinbefore quoted excerpt of her testimony, plaintiff, herself, testified that she could see defendants' automobile from as far away as 200 feet as it approached hers. Thus, in effect, she substantially corroborated the conclusion that the Patrolman arrived at, as the result of his experiment. Obviously, the Patrolman's said testimony was of a cumulative character; and, in the absence of any showing of prejudice to her cause, or rights, from such testimony, we cannot hold its admission error under the circumstances of this case. Nor can we perceive that, when considered with the other errors complained of by plaintiff, it had any such effect.

The judgment of the trial court is therefore affirmed.

IRWIN, C. J., BERRY, V. C. J., and DAVISON, WILLIAMS, JACKSON, HODGES, and LAVENDER, JJ., concur.

McINERNEY, J., concurs in result.