**Allan D. CAMPBELL, Appellant,**

v.

**Mandy Lea CLARK, Appellee.**

**No. 6461.**

United States Court of Appeals
Tenth Circuit.

Nov. 1, 1960.

Francis A. McLane, Omaha, Neb., and William H. Stowell, Phillipsburg, Kan., were on the brief for appellant.

Malcolm Miller, Wichita, Kan. (George B. Powers, Carl T. Smith, John F. Eberhardt, Stuart R. Carter, Robert C. Foulston, Robert N. Partridge, Robert M. Siefkin, Richard C. Harris, and Gerald Sawatzky, Wichita, Kan., were with him on the brief), for appellee.

Before MURRAH, Chief Judge, and BRATTON and PICKETT, Circuit Judges.

BRATTON, Circuit Judge.

The general nature of this action to recover damages arising out of a traffic accident was stated on a former appeal, Campbell v. Clark, 10 Cir., 271 F.2d 578; and no useful purpose would be served by stating it anew. On a trial after remand of the case, the court instructed the jury respecting the burden of proof, negligence, contributory negligence, proximate cause, sudden emergency, unavoidable accident, rules of the road, witnesses, expert witnesses, and damages. As on the first trial, the jury returned a verdict for the defendant; judgment was entered on the verdict; and the case is here again.

Error is predicated upon the action of the court in admitting in evidence the testimony of Ralph H. Snyder,

an expert witness. The witness was not at the scene of the accident, either at the time or later. He examined photographs taken at the scene of the accident shortly after the collision, made a study of the facts and circumstances disclosed, and expressed an opinion respecting primarily the point of the impact between the truck and the automobile, the angle of each vehicle at the time of the impact, and other related matters of secondary importance. It is the general rule that expert testimony or conclusions to be drawn from facts and circumstances are inadmissible in instances where the normal experience and qualification of laymen jurors enable them to draw proper conclusions from given facts and circumstances. Grayson v. Williams, 10 Cir., 256 F.2d 61. But expert testimony is appropriate when the subject of inquiry is one which jurors of normal experience and qualification would not be able to decide on a solid basis without technical assistance of one having unusual knowledge of the subject by reason of skill, experience, or education in that particular field; and the exercise within normal limits of the discretion of the trial court in the admission of such testimony will not ordinarily be disturbed on appeal. E. L. Farmer & Co. v. Hooks, 10 Cir., 239 F.2d 547, certiorari denied 353 U.S. 911, 77 S.Ct. 699, 1 L.Ed.2d 665. While this general rule lends itself readily to statement in the abstract, it sometimes presents difficulty of application when translated into a specific yardstick for use in delineating a line of demarcation between admissibility and inadmissibility of the testimony of an expert witness.

More often than otherwise, the question of the admissibility of expert evidence in actions for damages arising out of highway accidents has involved testimony of members of highway patrol, sheriffs, deputies, police officers, or other public officials who went to the scene after the accident had occurred, viewed the facts and circumstances, and then gave their opinion as to what happened. The courts are sharply divided numerical-ly and otherwise respecting the admissibility of evidence of that kind. See notes to Tuck v. Buller, 66 A.L.R.2d 1043. This court has considered the question. In Nelson v. Brames, 10 Cir., 241 F.2d 256, a consulting engineer and professor of mechanical engineering at a state university testified respecting the effect of chains while driving an automobile on snow and while driving one on ice; and he expressed the opinion that the use of chains in the circumstances shown in the case was not advisable. It was held that the testimony was inadmissible for the reason that it amounted to a usurpation of the function of the jury. In Grayson v. Williams, supra, the expert witness was a member of the highway patrol. The physical facts shown on an exhibit were such that jurors of ordinary experience were competent to understand and to draw their own conclusions flowing therefrom unaided by the opinion of an expert. It was held that the court did not abuse its discretion in deleting from the exhibit before it was introduced in evidence the conclusions of the expert as to what occurred. In Padgett v. Buxton-Smith Mercantile Co., 10 Cir., 262 F.2d 39, a member of the highway patrol arrived at the scene of the accident about an hour after it occurred. He testified that in his opinion the car owned by the appellant left an incriminating skid mark on the highway; that in his opinion the truck owned by the appellee was in its traffic lane at the time of the collision; and that in his opinion the automobile was at a slight angle when the two vehicles collided. It was held in effect that the testimony was inadmissible for the reason that it tended to trench upon the prerogative of the jury. And in Ordner v. Reimold, 10 Cir., 278 F.2d 532, the commander of the state highway patrol testified that, assuming the automobile in which the decedent was riding sustained a blow of sufficient force to produce the crease shown on the left rear fender, and assuming also that the automobile was under proper control, the blow would not have been sufficient to cause the automobile to change directions

across the highway. No complaint was made on appeal concerning the admission of such testimony. But the court took occasion to say that it should not have been admitted. While it was held in each of these cases that expert testimony of the kind involved was not admissible, it was made clear in the Padgett v. Buxton-Smith Mercantile Co. case that the door was not closed to all expert testimony. The court was at pains in that case to say in effect that expert testimony is admissible in cases where the matter to be decided is one involving causes and effects which are not within the range of knowledge and comprehension of the lay trier of the facts. And it was further said that in such circumstances expert testimony is not rendered inadmissible merely because it tends to invade the province of the jury.

■ This accident occurred late Monday afternoon. It was snowing and there was evidence tending to show that earlier in the day the highway was slick with ice at a point not far from the place of the accident. The truck driven by appellant was going south, and the automobile driven by appellee was going north. Appellant was the only eye witness to the accident who testified. The substance of his testimony was that he was traveling at about thirty-five or forty miles per hour; that the automobile was about one hundred yards away when he first saw it; that it was coming on its side of the road; that all at once it fishtailed to the left; that it then swerved to the right; that after swerving to the right, it instantly or a second later headed right straight at him; that the impact of the accident occurred on his side of the road; that the truck ended up in the ditch on the west side of the highway; and that the automobile ended up in a southwesterly fashion across his lane of traffic. He made statements concerning the circumstances of the accident which were not in complete harmony with each other and in some material respects were in conflict with his testimony. Appellee was a witness in the case. She testified that her automobile

was in good condition; that she had no trouble controlling it; that she had reduced her speed on account of the snow; that she was driving about twenty miles per hour; that the snow reduced her visibility; that she could see the road but could not see very far ahead; and that she was on her own side of the road. But she did not have any recollection of the accident. Her last recollection was when she came over a hill about one-half to three-quarters of a mile south of the point where the accident occurred; and the next thing she knew was Tuesday night when she was told of the accident. The expert witness was a safety engineer and also was known as an accidentologist. At the time of giving his testimony, he was engaged in three types of business at Oklahoma City, Oklahoma. They were all testing. He conducted a laboratory setup where drivers were tested to ascertain whether they were competent to drive trucks or equipment they were being hired to drive. He conducted a safety service company which consisted of a slide proposition. Through it, he furnished investigators and attorneys the braking distance of vehicles under all conditions, and various technical data for use in investigating accidents. And he conducted what he called an accident analysis laboratory. In connection with that operation, attorneys and others sent him their accident cases for analysis. Sometimes he was called to the scene of the accident if he was available or it happened close by; but as a rule, attorneys sent him cases and he made investigations and analyses for them. He had been investigating highway accidents many years and had testified as an expert in many cases. He had read extensively writings relating to investigations of accidents and he had written articles for publication in technical magazines and in the press relating to the analysis of accidents. He testified that when automobiles collide on the highway there are two impacts, and he referred to them as the first impact and the secondary impact. He commented upon the response of vehicles to such impacts. He explain-

ed the difference in weight as a factor in determining the behavior of vehicles in response to the impact. He referred to kinetic energy as a factor in molding circumstances developing in the course of highway accidents. He discussed the energies of moving vehicles in point of being dissipated by the initial impact. He said that in a collision, the vehicles may come clear off the ground, and that they then may turn one way or the other or assume one position or the other depending upon whether they met head on or at an angle. He discussed the difference in metals at different parts of autobiles as indicating a clue respecting the position of vehicles at the time of the collision. And he discussed other matters of a technical nature. Photographs used by the witness in making his study of the collision were introduced in evidence. He testified that he had not been able to determine how the vehicles arrived at any particular location on the highway prior to the point of the collision; that his findings were from the instant of impact afterward; that in his opinion they came together at an angle; and that in his opinion the truck was angled to its right and the automobile to its left at the instant of the impact. He made it clear that in reaching such conclusion, he took into consideration the weight of the two vehicles, the dominance in point of force of the truck, the points of damages to the vehicles, and the respective positions at which the vehicles came to rest. In Virginia, similar testimony given by the same expert witness was held to be inadmissible for the reason that it tended to usurp the function of the jury. Venable v. Stockner, 200 Va. 900, 108 S.E.2d 380. But in Leeper v. Thornton, Okl., 344 P.2d 1101, the drivers of both cars were killed, and no eye witness to the accident testified. Experts were used in an effort to reconstruct the collision and show the jury on which side of the highway it occurred. In short, the effort was to show through expert testimony which car precipitated the accident by crossing into the lane of the other. Snyder was one of the witnesses who testified as an expert. More than a year after the accident, he went to the place and examined the premises; he examined photographs taken at the scene of the collision; and he gave evidence similar in character to that given in this case. The case does not indicate that objection was made to his entire evidence on the ground that it tended to invade the province of the jury, and the point was not decided in specific terms. But the case does make it clear that the court considered the evidence sufficient in weight and probative value to support the finding of the jury that the Mercury automobile involved in the collision was on the wrong side of the road at the time. That view of the court indicates that the testimony was considered admissible for the purpose of aiding the jury in evaluating certain facts and circumstances disclosed by the evidence. In view of the fact here that appellant was the only eye witness to the accident who testified; in view of the conflicts between his statements and his testimony; in view of the fact that appellee was unable to recollect anything concerning the accident; and in view of the qualifications of the expert, we think that the court did not abuse its discretion in admitting his testimony as a means of aiding the jury in reconstructing the scene in respect to the point of impact of the two vehicles and in respect to their respective angles at the time of the impact.

█ Complaint is made that the court erred in giving to the jury an instruction on unavoidable accident. The substance of the argument is that the evidence was confined to negligence and that, therefore, no instruction should have been given relating to unavoidable accident. Meneley, by Myers v. Montgomery, 145 Kan. 109, 64 P.2d 550; Knox v. Barnard, 181 Kan. 943, 317 P.2d 452; and Kreh v. Trinkle, 185 Kan. 329, 343 P.2d 213, are cited in support of the contention. The substance of those cases is that where the evidence is confined to the issues of negligence and contributory negligence, an instruction on unavoidable accident should not be given. Here, the

issues of negligence, contributory negligence, and unavoidable accident were joined on the face of the pleadings; and the evidence was sufficient to take the case to the jury on the issue of unavoidable accident. Therefore, the giving of the instruction on that issue was proper.

 Finally, it is urged that the court should have given certain requested instructions. The brief of appellant purports to quote three requested instructions. But they do not appear in the record, and therefore, no question relating to their refusal is open to review.

The judgment is affirmed.