**Eula BONNER, Appellant,**

v.

**Joseph POLACARI, Appellee.**

**No. 8081.**

United States Court of Appeals
Tenth Circuit.

Sept. 16, 1965.

Robert D. Looney, Oklahoma City, Okl. (Looney, Watts, Looney, Nichols & Johnson, Oklahoma City, Okl., on the brief), for appellant.

Clayton Pierce, Oklahoma City, Okl. (Pierce, Mock, Duncan, Couch & Hendrickson, Oklahoma City, Okl., on the brief), for appellee.

Before MURRAH, Chief Judge, and HILL and SETH, United States Circuit Judges.

HILL, Circuit Judge.

This diversity action, originally brought by the plaintiff-appellant in the

District Court of Grady County, Oklahoma, and later removed to the federal court, concerns an automobile collision which occurred on U. S. Highway 81 south of Chickasha, Oklahoma. Trial of the case was had before a jury and a verdict returned in favor of the defendant-appellee, judgment was entered thereupon and this appeal followed.

In her original petition, appellant alleged generally that the appellee was driving south on U. S. Highway 81 which is a four lane divided highway, and immediately prior to the accident, occupying the west lane of the south-bound portion of the highway. Appellant further alleged that she was crossing the highway and completely crossed the west lane of the south-bound portion of the highway and almost crossed the east or inside lane when the appellee collided with her car. The specific negligence alleged was that appellee drove his car out of a clear lane in which he had a clear distance ahead; that he failed to keep a proper lookout; that he didn't have his car under control; and that he was driving at an excessive rate of speed.

The record discloses the following facts about which there appears to be no serious dispute. U. S. Highway 81 is a four lane divided highway running in a north-south direction south of Chickasha, Oklahoma. The center median between the north and south bound lanes of travel is twenty-four feet wide. Paralleling the highway on the west side twenty-three feet away is a service road which permits two way traffic. A county road running east and west intersects both the service road and continues on across Highway 81. It was at this intersection of the county road and the south-bound lanes of Highway 81 where the collision occurred. One further factor concerning Highway 81 should be mentioned. In the south-bound lanes beginning approximately 150–200 feet north and extending to the intersection of the county road is a cut-away in the inside lane designed for traffic desiring to turn left on the

county road. This left hand turn lane is twelve feet in width and decreases the median at the intersection from twenty-four feet to only twelve feet.

The appellant, Mrs. Bonner, prior to the collision was proceeding south on the west service road. When she approached the county road she stopped, turned left or east, and proceeded to cross the south-bound lanes of Highway 81. The appellee was traveling south on U. S. 81 and collided with the appellant as she was crossing the highway.

During the trial, Patrolman Hellwege of the Oklahoma Highway Patrol was called as a witness for the appellee. He testified that he was in Chickasha, Oklahoma (approximately one mile north of the collision) when the accident occurred. At 4:05 PM on August 3, 1961, he received a phone call reporting the collision and arrived at the scene five minutes later where he conducted an investigation. According to his testimony there was no evidence at the scene indicating the vehicles had been moved prior to his arrival. Patrolman Hellwege described the width of the highway in question and the physical facts concerning the highway, the county road and the service road. In addition, three photographs he took at the scene of the collision were introduced into evidence and used by him in his testimony to illustrate to the jury some of the physical facts of the accident including the highway, the position of the cars, the debris on the highway caused by the collision and some of the tire skid marks. One set of skid marks was identified by the patrolman as having been laid down by appellee's car in that the tire marks extended from where the car stopped back to where the marks started. He further identified other skid marks attributable to appellant's car. He testified that in his opinion the right front of appellee's car came in contact with the left front of appellant's car.

After further questioning, he revealed that appellee's skid marks measured 59 feet up to the point they made a sharp angle turn and from that point until the

automobile came to rest was another 79 feet of tire marks. The following testimony then occurred:

"Q. Did you, Officer, in this instance, based upon your experience, based upon the skid marks that you found left by the Polacari car, the distance it traveled thereafter, the distance Mrs. Bonner's car traveled, did you formulate an opinion as to the speed of the Polacari car at the time that the brakes were applied? A. Yes, sir.

Q. What was that, in your opinion?

MR. LOONEY: To which we now object, being totally without the scope of the experience of this witness. It's a conclusion he has not been qualified to make, invades the province of the jury. It is a matter that the witness himself says he cannot say because there were two vehicles which collided, and with the speculation that he admits himself, we think it's highly incompetent and object to it on those grounds.

THE COURT: Overruled. This is not an opinion as to the accident. This is an opinion having to do with speed only.

MR. LOONEY: Yes, sir.

THE COURT: Overruled.

A. (The Witness) I set the speed at 60 miles an hour."

When asked for an opinion as to the speed of appellant's car, an objection was sustained by the court because the skid marks of appellant's car were sideways. Upon cross-examination, the patrolman was asked upon what he based his opinion about the speed of appellee's car and he answered, "Based it on the total length of the skid marks plus the impact, as near as I can tell from the force of the impact, and damage to the two vehicles." Finally, he was asked:

"Q. All right, just tell us then how you arrived at the formula you used to arrive at the conclusion he was going 60 miles per hour. A. Well, I can tell you that even at that time I knew that a vehicle going 60 miles an hour with its brakes fully locked, would travel 300 feet, with those brakes locked. The total distance that this vehicle laid down skid marks, let me check here just a minute, 148 feet which was less than half the distance the vehicle traveling 60 miles an hour would lay down if it didn't hit anything."

\*    \*    \*    \*    \*    \*

"Q. Do you know that in order for a body, a mass such as an automobile, to be moved from the position the Bonner car was in, in the direction that you have said that it was moved, some 30 odd feet? A. Yes, sir.

Q. Sideways and backwards from the distance it had been going, did not you know that that is a factor that you must consider in arriving at the speed of the Polacari car? A. Yes, sir.

Q. And you didn't use that factor, did you? A. Yes, sir.

Q. Well, how could you—tell us how you did. A. Well, as I told you, I took the total distance that two, that the vehicle would have traveled if it went 300 feet, which it didn't. It went 148 feet, less than half.

Q. Yes. A. And I took that additional distance and at that part I had to estimate by the damage and how far it knocked this other vehicle. I had to estimate by the damage and by the distance this other vehicle traveled, what speed he hit the vehicle at and account for the rest of the speed."

The evidence of Patrolman Hellwege was admitted over appellant's objection on the grounds generally that it was conjectural, invaded the province of the jury and that the witness was not qualified as an expert. Appellant's main ground for reversal is that the trial court erred in permitting the patrolman to give his opinion of the speed of appellee's automobile. We agree with the

trial court that this evidence was properly admitted.

■ In a line of cases beginning at least as early as Andrews v. Moery, 205 Okl. 635, 240 P.2d 447,[1] the Supreme Court of Oklahoma has consistently held that a highway patrolman may properly give his opinion as to the speed of a vehicle and point of impact based on physical evidence and further that such testimony does not invade the province of the jury for it does not go to the ultimate issue for the jury to decide. While there are cases in this Circuit which would restrict to some extent this type of testimony,[2] we feel obliged under Rule 43, F.R. of Civ.Proc., to favor a rule which would allow the evidence. Certainly when a police officer's testimony about an accident does go to the ultimate issue for the jury[3] or is based on hearsay,[4] it should not be received. But that is not the case here. Despite the fact that both the appellee and the appellant made statements to Patrolman Hellwege indicating what they believed to be the speed of their car prior to the collision, the patrolman consistently maintained both on direct and cross-examination that his opinion of the speed of appellee's car was based upon the physical facts surrounding the accident including the tire skid marks, the debris, the point and force of impact and the damage to the vehicles. We believe a proper foundation was laid for the basis of the patrolman's testimony, particularly in light of the fact he arrived at the accident shortly after it occurred. Patrolman Hellwege's qualifications as an expert cannot be doubted. We note that he has fifteen years experience as a highway patrolman during which time he has investigated a considerable number of automobile accidents and that he has kept abreast of the field of automobile investigations by attending various refresher courses at institutions in the State of Oklahoma. In any event, the question of his qualifications was within the trial court's discretion which we will ordinarily not disturb on appeal.[5]

■ One further point raised by appellant must be examined. She claims the trial court erred in not allowing her to prove the amount of witness fee paid to Patrolman Hellwege by the appellee. Assuming, without so holding, that this was error, we fail to see after carefully examining the entire record that this affected the substantial rights of the parties and therefore we must disregard it.[6] In addition, the appellant had the burden of showing that any prejudice resulted by not being able to pursue this matter which she has not done.[7]

Affirmed.

1. For other cases see E.g. Ruther v. Tyra, 207 Okl. 112, 247 P.2d 964; Tuck v. Buller, 311 P.2d 212, 66 A.L.R.2d 1043; Groninger & King, Inc. v. T.I.M.E. Freight Inc., 384 P.2d 39; and Kelso v. Independent Tank Company, 348 P.2d 855. Furthermore, this seems to be the general rule, 23 A.L.R.2d 112. See also Swink v. Colcord, 10 Cir., 239 F.2d 518 and Campbell v. Clark, 10 Cir., 283 F. 2d 766.

2. See Padgett v. Buxton-Smith Mercantile Company, 10 Cir., 262 F.2d 39; Ward v. Brown, 10 Cir., 301 F.2d 445.

3. In Jackson v. Brown, 361 P.2d 270, the officer answered affirmatively when asked if one of the drivers "cut this corner" and "she was making an improper turn here." Also in Washita Valley Grain Co. v. McElroy, 262 P.2d 133, where the expert witness was asked, "From your examination as an expert, do you see any negligence on the part of the driver of the McElroy car in this case?"

4. Nash v. Hiller, 398 P.2d 817.

5. Campbell v. Clark, supra, note 1.

6. Rule 61, Federal Rules of Civil Procedure. See also Creekmore v. Crossno, 10th Cir., 259 F.2d 697.

7. Palmer v. Hoffman, 318 U.S. 109, 63 S. Ct. 477, 87 L.Ed. 645.