N. L. CLIFTON, Ruth Clifton, Clifton Trucking Company, and Northland Insurance Company, Appellants,

v.

Cyrus Lowell MANGUM, Whiting Motor Company, Inc., and Farmers Insurance Company, Appellees.

No. 8301.

United States Court of Appeals Tenth Circuit.

Sept. 14, 1966.

Charles T. Hooker, Albuquerque, N. M. (LeRoi Farlow, Albuquerque, N. M., with him on brief), for appellants.

Richard Cooper, Albuquerque, N. M. (Bryan G. Johnson and J. J. Monroe, Albuquerque, N. M., with him on brief), for appellees.

Before MURRAH, Chief Judge, and PICKETT and HICKEY, Circuit Judges.

MURRAH, Chief Judge.

This case involves liability for damages arising out of the collision of two tractor-trailers on a New Mexico highway. N. L. Clifton and his wife, Ruth, were driving east in one and C. L. Mangum was headed west in the other. They collided, both coming to rest on the north (Mangum) side of the road some three hundred fifty feet apart. Clifton, his wife and his insurance-carrier-subrogees sued Mangum and the owner of the Mangum truck, Whiting Motor Company, alleging Mangum negligently caused the collision. Mangum and Whiting answered denying negligence and affirmatively alleging that Clifton negligently caused the collision. Whiting and its insurance-carrier-subrogee in turn counterclaimed against the Cliftons; the substance of the allegations in the countersuit was the same as in the primary suit.

On the issues thus joined the jury found that plaintiffs should take nothing and that counterclaimants Whiting and Farmers Insurance Company should re-cover the respective sums of $5,000 and $5330.82 against counter-defendant N. L. Clifton. Clifton, his wife and subrogee-Northland Insurance Company appeal from the judgment on this verdict and from the order of the trial court denying their motion for judgment n. o. v. or in the alternative for a new trial.

On the trial of the case the critical issue was which, if either, of the two trucks was on the wrong side of the highway at point of impact. Both drivers testified they were on their respective sides of the highway. The investigating patrolman did not attempt to express an opinion on this critical issue. In this posture both sides offered and the court admitted expert testimony to the effect that the other truck was on the wrong side.

This appeal involves the admissibility of the testimony of appellees' expert, Morrelli. After being qualified as a civil, mechanical and aeronautical engineer and as an accidentologist, and after examining photographs depicting the scene of the accident, the trucks involved and the gouge and scrape marks on the road at the scene, he was asked if he had come to a conclusion "as to which vehicle was on which side of the road." Appellants' attorney objected to this question "for the reason that this witness has not—there is no proper foundation that he investigated the vehicles, that he investigated the marks on the highway, that the only thing he has looked at is photographs, and he isn't qualified from the—as to this point, to testify from the photographs as an expert." After an intervening exchange during which Morrelli maintained that the pictures in evidence were sufficient physical evidence to allow him to arrive at a conclusion, he was again asked which of the vehicles crossed the center line. Again appellants' attorney objected that "this witness' conclusions are based entirely on hearsay, without any first-hand. He made no investigation, whatsoever, of this accident." The court overruled the objection as going to the weight and not the admissibility of the evidence. Morrelli then answered that it was his opinion that the east-bound Clifton truck

crossed the center line into the north or wrong lane.

■ Appellants first assert that under our decision in Padgett v. Buxton-Smith Mercantile Co., 10 Cir., 262 F.2d 39, Morrelli's opinion was incompetent as not involving the application of any special skill, but was equally within the knowledge and comprehension of the lay jury. Before we reach that question, however, we must first answer appellee's contention that this point was not saved for review by a sufficiently definite objection. A similar situation arose in Padgett, supra, where we held the objections there sufficiently specific to raise the question of competency of the patrolman's expert testimony.[1] It is indeed debatable whether the objections here were directed to competency to testify as an expert, or whether they merely challenged the foundation for such testimony, i. e. whether he had viewed the scene and investigated the vehicles. But, as in Padgett, we liberally interpret the objections to go to the competency of Morrelli's expert testimony as well as the foundation for such testimony. The trial court evidently so understood and interpreted the objection in ruling that it went to the weight and not to the admissibility of the evidence. Cf. Fisher v. Suko, N.D., 98 N.W.2d 895.

In Padgett we reversed the admission of the expert testimony of the highway patrolman who identified the offending car by merely tracing the incriminating skid marks from the point of impact to the point where the car came to rest. Consistently with cited case law, we took the view that the mere tracing of the skid marks was as much within the knowledge and comprehension of a lay jury as a highway patrolman. But, as later observed in Campbell v. Clark, 10 Cir., 283 F.2d 766, we were careful to leave the door open to expert testimony where "the matter to be decided is one involving causes and effects which are not within the range of knowledge and comprehension of the lay trier of the facts." Specifically, we said in Padgett that "The identification of these incriminating marks may very well involve scientific skill and knowledge which lie in the realm of expertise."

■ A comparison of Campbell and Padgett as illuminated by Judge Bratton in Campbell serves to illustrate the proper use of expert testimony in the resolution of liability in cases of this kind. Thus, in Campbell in the face of the dearth and inconclusiveness of evidence bearing on the position of the vehicles at point of impact, the accidentologist was permitted to bring his skill and expertise to bear on that critical issue. So it is with us. The crucial inquiry here concerned the identity of the truck which made a telling scrape mark on the north side of the highway. This scrape could not be traced to the final resting point of either of the vehicles, and the identity of the truck that caused it was in sharp controversy. The Clifton truck admittedly came to rest on the north or wrong side of the highway, and if it could be shown to have laid down the scrape mark, it is fairly inferable that the Clifton truck was on the wrong side of the highway at point of impact. On the basis of his edu-

---

1. In Padgett, supra, the witness was asked, " 'from the physical evidence that you found there at the scene of the accident, including the skid marks, the damaged portions of the vehicles, the chrome on the highway, did you then arrive at a determination as to which vehicle had left this skid mark?' " This question was objected to on the grounds " 'that he is not qualified to state an opinion of that kind, having arrived at the scene of the accident approximately one hour afterwards, and the fact that it was raining, and there has been no attempt to qualify this man as a skid mark expert * * *.' " The objection was sustained. On re-direct the witness was asked " 'as a result of your investigation then of the vehicles, and what you had been told by the parties about the accident, did you make a determination as to which vehicle had left that skid mark?' " The appellant then interposed, " 'same objection, your Honor. He is not qualified to give an opinion on this matter.' " The court overruled the objection and permitted the witness to testify. Id. 40.

cation and knowledge of the construction of trucks and his study and analysis of the photograph of the scrape Morrelli was able to attribute it to the left "dolly" or "parking" wheel on the Clifton trailer and conclude that the Clifton truck had, therefore, crossed the centerline onto the north or wrong side of the highway.

■ We believe Morrelli's opinion was admissible under Padgett and Campbell, supra. Cf. Ward v. Brown, 10 Cir., 301 F.2d 445; Bonner v. Polacari, 10 Cir., 350 F.2d 493. This is not a case involving the mere tracing of incriminating skid marks from the point of impact to the point where the vehicle came to rest. Instead, it involves the identification of the offending vehicle by scientific analysis of the incriminating scrape—a matter not within the knowledge and comprehension of the jury. As we observed in Campbell, the admissibility of testimony of this nature must be left to the sound discretion of the trial court. It is only when the proffered evidence is clearly within the comprehension of a layman that we will disturb its judgment.

But, appellants contend that in any event Morrelli's testimony is inadmissible as based in part at least on hearsay and is, therefore, without proper foundation. The argument is bottomed on the admitted facts that copies of photographs not admitted in evidence were sent to Morrelli for study along with copies of those which were admitted, that a covering letter was also included, and that Morrelli visited the since-buried scene of the accident on the Sunday before the trial. Appellants do not seem to contend that the foundation for Morrelli's testimony is fatally impaired by his failure to view the scene of the accident while the marks were discernible. And see Campbell, supra.

■ We have said that when expert opinion is based on personal information of a hearsay nature the opinion lacks a proper foundation. See Ward v. Brown, supra; Bonner v. Polacari, supra. But, mere exposure to hearsay does not necessarily imply reliance thereon. Mor-

relli consistently maintained he was relying solely on the photographs in evidence, and so far as exposure to hearsay is concerned, we are inclined, of course, to take his word. He did, however, inferentially admit at one point that he relied upon hearsay to determine which vehicle laid down certain secondary marks. While there may be some hearsay defects in those secondary determinations, we are convinced that Morrelli attached little weight, if any, to them in forming his basic opinion as to which truck crossed the center line. As we have seen, his expert opinion is primarily based upon his scientific determination of which vehicle laid down the incriminating scrape mark. His inferential reference to hearsay with respect to the secondary marks does not render his opinion evidence inadmissible.

■■ Error is asserted for refusal to give appellants' requested instruction on the New Mexico Statute requiring the dimming of headlights. New Mexico Stat. Anno., 1953, §§ 64–20–2, 64–20–31. The argument is that this refusal removed an issue of negligence supported by the evidence from the jury. The trial court refused the instruction because not directed toward an "issue as to a proximate cause in this case." It may be that this statute sets the standard of care insofar as the duty to dim headlights is concerned. And, if there is any evidence tending to show that failure to dim headlights was the cause of the accident, an appropriate instruction would be in order, for a party is entitled to an instruction based on his theory of the case if there is evidence in the record to support it. See Blassingill v. Waterman Steamship Corporation, 9 Cir., 336 F.2d 367, 368. However, the record reveals no evidence that the lights on Mangum's truck, whether bright or dim, affected Clifton's driving in any manner at all, and the trial court, therefore, correctly refused to give the instruction.

■ Since we hold the challenged testimony admissible, and since it together with the other facts and circumstances of the case was sufficient to support the verdict of the jury, the trial court did not

err in refusing to grant the judgment n. o. v. or abuse its discretion in refusing to grant a new trial. At most, the argument on this point goes to the weight of the evidence—a matter not within the scope of review.

The judgment is affirmed.