UNITED TELECOMMUNICATIONS, INC., a Kansas Corporation, Plaintiff-Appellee,

v.

AMERICAN TELEVISION AND COMMUNICATIONS CORPORATION, a Delaware Corporation, Defendant-Appellant.

No. 75–1462.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted March 23, 1976.

Decided June 16, 1976.

David M. Ebel, of Davis, Graham & Stubbs, Denver, Colo. (Robert H. Harry and Alan M. Loeb, of Davis, Graham & Stubbs, Denver, Colo., on the brief), for plaintiff-appellee.

Harry L. Hobson, of Holland & Hart, Denver, Colo. (Robert T. Connery and Stephen L. Pepper, of Holland & Hart, Denver, Colo., of the brief), for defendant-appellant.

Before BREITENSTEIN, McWILLIAMS and DOYLE, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

This is a diversity action in which the appellant was defendant in the trial court and suffered the award of a judgment based on a jury verdict in the amount of $2,021,500. The action brought by plaintiff-appellee was for a breach of contract and breach of warranty. The case was filed December 5, 1973 and was tried in March 1975.

Involved here is the exchange of an interest in Jefferson-Carolina Corp., a cable television company, by United Telecommunications, Inc. ("United") for 175,000 shares of American Television & Communications Corp. ("ATC").

United is said to be the third largest telephone company in the United States. ATC is a Delaware corporation based in Denver and the operator of cable television systems. The purchase agreement between United and ATC was signed on Februry 22, 1972. It outlined the basic terms, that is, that United would receive 175,000 unregistered shares of ATC. The agreement also gave United the right to demand registration of these shares any time after the transaction was closed. Upon the making of such a call by United, ATC undertook to use its "best efforts" to obtain registration by preparing and filing a registration statement and by causing the statement to become and remain effective. In addition, ATC represented and warranted that the execution and carrying out of the agreement and compliance with the provisions of it by ATC would not conflict with or result in any breach of any of the terms, conditions or provisions of any agreement to which ATC was a party or by which it was bound or affected. Further provisions in the agreement were that all ATC representations and warranties would be true and correct as of the closing and would survive the closing. The closing occurred on August 16, 1972, in Greensboro, North Carolina. Immediately following the closing, United called for registration of its ATC shares.

In May 1972, ATC entered merger negotiations with Cox Cable Communications, Inc., and by July 19, 1972, the two companies had reached an agreement on the merger, which agreement was announced. United was informed of it on July 19, 1972, at which time it was told that a representative from Cox Cable ("Cox") would be present at a meeting scheduled for July 20. In an effort to secure the registration of the shares and also to gain approval for the proposed merger with Cox, ATC submitted the two propositions together to the Securities and Exchange Commission and did so on September 29, 1972. Due to the fact that the registration statement did not include the consents of the Cox nominees for board members of the surviving corporation and did not request SEC waiver, the registration was not approved. Subsequently, ATC sought to obtain the consents of the nominees, but was unable to get them. A further problem with the registration statement was that it needed to include certain information about Cox Cable for the accuracy of which ATC, its officers, directors and an underwriter would be held liable. Cox, however, refused ATC's request for indemnification.

At a meeting which was held on November 8, 1972, with Cox, United and ATC present, ATC said that it had decided to postpone registration until the Cox merger was completed. This decision had actually been reached earlier on November 2. At the meeting Cox announced that the merger could not proceed if the registration went forward first. United stated its position that it would not acquiesce to the postponement of the registration. The merger between Cox Cable and ATC was substantially completed on December 15, 1972, at which time United voted for the merger. It was, however, thwarted by a suit filed by the Department of Justice on antitrust grounds. The registration statement never became effective and was withdrawn by the SEC at ATC's request on April 6, 1973. In conjunction with the withdrawal of the reg-

istration statement the price of ATC stock declined from $45.75 on November 8, 1972 to $34.50 on April 6, 1973 and finally to $7.75 as of the time of the filing of this action on December 3, 1973.

The essence of this action by United is that ATC failed to use its best efforts to register United's ATC shares and, secondly, it was alleged that ATC's simultaneous merger with Cox was in conflict with its undertaking to register the stock. The claim was for $9.6 million in damages. However, the jury awarded a lesser amount, $2,021,500.

ATC's appeal is based on the following contentions:

1. That it was error for the court to charge the jury that United was entitled to recover interest costs or borrowing costs or expenses which allegedly it paid as a result of failure of ATC to use its best efforts to bring about the registration.

2. The alleged error of the court in failing to direct a verdict on the issue of ATC's conflict arising from the effort to bring about the merger and the registration at the same time.

3. The exclusion of expert testimony tendered by ATC.

4. The refusal of the trial court to instruct on waiver and ratification and an inadequate instruction on estoppel.

5. The alleged error in failing to instruct on "best efforts."

6. The error of the court in failing to give instructions which were specific with respect to damages.

## I.

## WHETHER UNITED WAS ENTITLED TO RECOVER INTEREST AS DAMAGES

At the trial United presented testimony which showed the amount of its borrowing costs and the nexus between these costs and the breach of ATC. United also presented testimony showing that ATC was aware before entering into the agreement that United had planned to convert the ATC stock to cash and would use that cash to reduce its short-term debts. Evidence was also offered to show that parties were aware that registration was necessary in order to have a successful public sale of the stock and that they also were aware that a private sale could be obtained only at a significant discount. For this element of damage United claimed the sum of $1.6 million.

The trial court explained to the jury that the plaintiff was claiming that it suffered an additional direct loss "by being unable to reduce its short-term debt by the amount of money which it would have received on the sale to the public of the registered shares of ATC stock." The trial court also explained that the claim was that the cost of continued borrowing was a part of actual damages from the breach. The court then continued:

"As to this claim, you must find from a preponderance of the evidence that this was a natural and probable consequence of the claimed breach of contract by the defendant and also that at the time the parties entered into the contract, the defendant reasonably could have anticipated from the facts and circumstances which it then knew or should have known, that these damages would probably be incurred by the plaintiff if the defendant breached the contract."

ATC maintains that this instruction was erroneous. Its argument is that the instruction allowed United to recover prejudgment interest, and that applicable Colorado law bars such interest. United responds that this is not prejudgment interest in that it is not the kind of interest contemplated by the Colorado statutes and, instead, it is, according to United, borrowing costs which are recoverable like any other element of contract damage.

In general, we agree with the United argument and with the position taken by the trial court that interest as an item of damage or loss related to the substantive claim differs from interest meas-

ured by a percentage of the judgment.[1] In our view the kind of interest that was here awarded is not barred or limited by the Colorado interest statute and the Colorado cases. Here our concern is with United's borrowing costs and expenses. The Colorado statute does not deal with interest charges which arise from an independent debt owed by the plaintiff to a third party. So even on the assumption that the law of Colorado governs, it would not be the *Hays v. Arbuckle, supra,* line of cases together with the interest statute which would apply.

Had United claimed damages of $8 million for lost market value stemming from the stock not being registered together with interest measured by a percentage of that loss, the claim would have been one for prejudgment interest subject to the limitations of Colorado law. When United claims, however, that it is entitled to recover from ATC expenses which resulted from interest which it was obligated to pay on money which it was required to borrow as a result of ATC's unwarranted delays and manipulations, a wholly different theory is presented. This latter type of interest is not regulated by the Colorado interest statute.

So, having determined that the substantive rights here asserted by United are governed by general damage principles, we need not pursue the *Hays v. Arbuckle, supra,* doctrine as to the choice of law in the area of prejudgment interest. Contractual rights such as we are here considering are under Colorado law governed by the place where the contract was made and the place designated by the parties as governing. *See Western Enterprises, Inc. v. Robo Sales, Inc.,* 28 Colo.App. 157, 470 P.2d 931 (1970).[2] In this case, that is North Carolina.

Finally, we consider whether the North Carolina court would allow recovery of borrowing costs and expenses as an element of damages. We conclude that it would and does. North Carolina recognizes that a party injured by a breach of contract has a right to be compensated "insofar as this can be done by money." Also, "he is entitled to be placed in the same position he would have occupied if the contract had been performed." *Perfecting Service Co. v. Produce Dev. & Sales Co.,* 259 N.C. 400, 131 S.E.2d 9, 21 (1963). *Accord, Tillis v. Calvine Cotton Mills, Inc.,* 251 N.C. 359, 111 S.E.2d 606 (1959). Indeed, North Carolina has specifically endorsed the doctrine of *Hadley v. Baxendale,* 9 Ex. 341 (1854). *See Perkins v. Langdon,* 237 N.C. 159, 74 S.E.2d 634, 643 (N.C.1953), holding that a defendant is liable for damages based upon proximate cause and foreseeability, including damages flowing from "special circumstances known and communicated." *See Perkins, supra,* 237 N.C. at 170, 74 S.E.2d at 643; *Tillis, supra; Chesson v. Kieckhefer Container Co.,* 215 N.C. 112, 1 S.E.2d 357 (1939); *Industrial Circuits Co. v. Terminal Comm., Inc.,* 26 N.C.App. 536, 216 S.E.2d 919 (N.C. App.1975). The instruction given by the court in which foreseeability is the guide is in accord with North Carolina law on the subject. None of the cases cited are closely analogous to the present case with the pos-

---

1. ATC has made a somewhat elaborate and well structured argument based on the applicability of the limitations of the Colorado interest statute. 1973 C.R.S. 5–12–102. *Hays v. Arbuckle,* 72 Colo. 328, 211 P. 101 (1922) is relied on for the proposition that the law of the forum applies to the award of interest. United also cites *North Drive-In Theatre Corp. v. Park-in Theatres, Inc.,* 248 F.2d 232 (10th Cir. 1957), wherein this court took an expansive view of *Hays. Cf. Stemple v. Phillips Petroleum Co.,* 430 F.2d 178 (10th Cir. 1970), and *see also Anderson-Thompson, Inc. v. Logan Grain Co.,* 238 F.2d 598, 602 (10th Cir. 1956). Unquestionably under Colorado law the judicial award of interest is governed by the statute. It does not come from common law. *See Hendrie v. Board of County Commissioners,* 153 Colo. 432, 442, 387 P.2d 266, 271 (1963). It is idle, however, for us to speculate on whether Colorado allows recovery of prejudgment interest on an unliquidated sum in a breach of contract action since no such claim is made here.

2. *See also Denver Truck Exch. v. Perryman,* 134 Colo. 586, 307 P.2d 805 (1957); *Gossard v. Gossard,* 149 F.2d 111 (10th Cir. 1945); *Baxter v. Beckwith,* 25 Colo.App. 322, 137 P. 901 (1913); Ehrenzweig, Conflict of Laws 467–68 (1962).

sible exception of *Gulf States Creosoting Co. v. Loving*, 120 F.2d 195 (4th Cir. 1941).

Cases from other jurisdictions do give credence to the proposition here approved. *See New Amsterdam Cas. Co. v. Mitchell*, 325 F.2d 474 (5th Cir. 1963) (additional interest on construction loan because of builder's delay); *Thompson v. Hanson*, 6 Wash. App. 1, 491 P.2d 1065 (1971) (semble); *Herbert & Brooner Construction Co. v. Golden*, 499 S.W.2d 541 (Mo.App.1973) (semble); *Repinski v. Clintonville Federal S&L Ass'n*, 49 Wis.2d 53, 181 N.W.2d 351 (1970) (recovery of additional interest charge because of S&L's promise to loan money at favorable rates.) [3]

## II.

## WHETHER SUBMISSION OF COUNT II TO THE JURY WAS ERROR

Count II of the complaint alleged that ATC's July 19, 1972 agreement (in principle) to merge with Cox Cable was basically inconsistent with and specifically a breach of paragraph 4(i) of the February 22, 1972 Purchase Agreement between ATC and United.

ATC, of course, maintains that there was a dearth of evidence to support Count II and hence that its motion for a directed verdict ought to have been granted. The provision which United says was violated is paragraph 4(i) of the February 22, 1972 agreement between ATC and United. Paragraph 4(i) states in part as follows:

> The execution and carrying-out of this Agreement and compliance with the provisions hereof by ATC will not conflict with or result in any breach of the terms, conditions, or provisions of, or constitute default under . . . any . . . agreement . . . or other instrument to which ATC or its subsidiaries is a

party or by which any of them is bound or affected.

ATC's position is that there is no direct evidence supporting that there was a conflict between the ATC/United Purchase Agreement and the Cox merger. The argument contends that as of July 19 United did not own any ATC shares and that it (ATC) did not know when United might exercise its right to call for registration. They also say that the refusal of Cox to cooperate with the registration was unforeseeable and unexpected.

This being a diversity case, federal law governs in selection of the standard applicable to the determination of sufficiency of the evidence. *Palmer v. Ford Motor Company*, 498 F.2d 952 (10th Cir. 1974); *Kiner v. Northcutt*, 424 F.2d 222 (10th Cir. 1970). Our court's rule is that a directed verdict is to be granted "only where the evidence and all the inferences to be drawn therefrom are so patent that minds of reasonable men could not differ as to the conclusions to be drawn therefrom." *Taylor v. National Trailer Convoy, Inc.*, 433 F.2d 569, 571–72 (10th Cir. 1970); *Symons v. Mueller Company*, 493 F.2d 972 (10th Cir. 1974). The evaluation must be in the light most favorable to the party against whom the motion is made. *Symons v. Mueller Company, supra.*

We disagree with ATC's argument that the evidence in this case is all one way and susceptible of no reasonable inferences which sustain the position of United (against whom the motion was made). *Palmer v. Ford Motor Company*, 498 F.2d 952, 953 (10th Cir. 1974).

It is not surprising that there is a lack of direct evidence on this question. This does not mean, however, that there is no evi-

---

**3.** *See also Carl Beasley Ford, Inc. v. Burroughs Corp.*, 361 F.Supp. 325 (E.D.Pa.1973), *aff'd in unpub. op.*, 493 F.2d 1400 (3rd Cir. 1974) (upon revocation of acceptance of defective computer which failed to work during whole year when in plaintiff's possession, plaintiff may recover as consequential damages interest on third party loan that defendant knew it would take out to finance purchase). *Cf. Weiner v. 222 East Chestnut Street Corp.*, 303 F.2d 630 (7th Cir. 1962) (upon failure of defendant's appeal from zoning variance allowed plaintiff, plaintiff allowed to recover as part of supersedeas damages the increased interest costs resulting from delay caused by the appeal).

dence since the circumstances plainly demonstrate the existence of an ATC conflict between the Cox merger and the stock registration agreement. ATC and Cox entered into an agreement in principle to merge; Cox, being interested in merger and only secondarily interested in registration of stock, refused to cooperate with the registration. We disagree with ATC's argument that this was not to be anticipated. The fact that a conflict developed is strong evidence that the two subjects were in some ways opposed. We also disagree with ATC's argument that it was not required to anticipate that there would be no demand for registration immediately after the closing, whereby it was not required to obtain a commitment from Cox ahead of time to cooperate in the registration. The registration was of primary importance to United and so it could not have been surprising that United called for registration immediately.

■ The evidence also shows that ATC postponed the registration effort until the merger question was resolved. Again this demonstrated a basic conflict between the merger and registration. From these facts the jury was at liberty to infer that the merger did come into conflict with the purchase agreement as shown by the fact that it created circumstances which made it unfeasible for ATC to proceed with the registration.

In summary, viewing the facts most favorably to United, the agreement to merge set in motion a chain of events which made registration incompatible with merger. Thus, it could be considered in conflict with the purchase agreement. These circumstances sustained United's claim sufficiently to justify submission of the cause to the jury for it to determine whether the merger agreement in principle was not in conflict with the purchase agreement. The result we reach is that the court did not abuse its discretion in denying the motion.

## III.

## "BEST EFFORTS" TO PREPARE AND FILE . . . A REGISTRATION STATEMENT

Paragraph 14(a) of the February 22, 1972 Purchase Agreement is the provision in which appellant ATC agreed "to use its best efforts to prepare and file . . . a Registration Statement" and to "use its best efforts to cause such Registration Statement to become and remain effective" upon the written demand of United. ATC here argues that these words "best efforts" have a specialized or technical meaning, one in which expert assistance was necessary to jury understanding. Specifically, ATC's argument is that the trial judge erroneously excluded evidence regarding the meaning of "best efforts" and that the trial judge should have instructed the jury in greater detail on the meaning of the term.

### A. *Exclusion of Opinion Evidence*

Expert testimony regarding the meaning of "best efforts" in registration covenants was offered by ATC. It sought to present the testimony through its expert witness, Francis M. Wheat, a lawyer who had been an SEC Commissioner from 1964 through 1969. Mr. Wheat was allowed to testify as to the meaning of "best efforts" in underwriting agreements. The trial court, in response to defendant's objections, excluded evidence regarding the meaning of the phrase in registration covenants.[4] ATC says that since the case involved the "complexities" and "intricate interaction and effect" of a merger upon an impending registration, the jury required the assistance of an expert in determining whether or not ATC fulfilled its "best efforts" obligation.

■ Since this diversity action was tried prior to the effective date of the newly-promulgated Federal Rules of Evidence, we look to Colorado law or the rules of equity of the federal courts for the standards governing the admissibility of expert

---

4. In addition, the court ruled that it would sustain objections to questions whether or not ATC had used its best efforts, and it excluded

questions intended to elicit illustrations of the meaning of "best efforts" from Mr. Wheat's own experience.

testimony. 5 J. Moore, Federal Practice, paragraph 43.02(4). Expert testimony is warranted "where the facts are such that inexperienced persons are likely to prove incapable of forming a correct judgment" without expert assistance. *City of Pueblo v. Ratliff,* 137 Colo. 468, 327 P.2d 270, 274 (1958); *Clifton v. Mangum,* 366 F.2d 250 (10th Cir. 1966). On the other hand, expert testimony is not necessary where the matter in issue is such that the jury can be expected to draw the correct inferences from the facts presented. In this situation the expert will not provide material assistance to the jurors. *McNelley v. Smith,* 149 Colo. 177, 368 P.2d 555 (1962); *Bridges v. Lintz,* 140 Colo. 582, 346 P.2d 571 (1959); *New Mexico Savings & Loan Association v. United States Fidelity and Guaranty Company,* 454 F.2d 328 (10th Cir. 1972). The determination of competency and admissibility of expert testimony is within the discretion of the trial court, *City of Pueblo v. Ratliff, supra; New Mexico Savings & Loan Association v. United States Fidelity and Guaranty Company, supra,* and is reviewable only for abuse of that discretion.

From an examination of Mr. Wheat's proposed testimony, set out in appellant's offer of proof, it appears that his response was not directed toward clarifying a highly technical issue. His testimony in part would have been as follows:

In my opinion, a "best efforts" registration obligation does not preclude the company from proceeding with important agreements, and among those important agreements would be a proposed merger, so long as that process is done in a good faith and without an intent to—a specific intent to impede or to prevent the carrying out of the obligation.

In other words, the obligation, the "best efforts" obligation is subject to those matters of significance to the business, the ongoing business which impacts the company from time to time during its history.

And the demand for registration, which may come shortly, or it may come years later, under these circumstances and in the light of that specialized meaning, simply cannot prevent the company from going forward with such matters of business which are important to it.

The proposed testimony was framed in terms of "good faith" and "specific intent to impede" the effectuation of the registration. This language is just as general as "best efforts." The jury would still be left to determine whether the actions which ATC took relative to the Cox merger and the registration statement manifested bad faith or an intent to impede. Moreover, in testifying about the meaning of "best efforts" in the analogous context of underwriting agreements, Mr. Wheat used equally general language:

It [best efforts] means that the person obligated by that covenant must use diligent and competent efforts to cause the registration statement to become effective consistent with its ongoing business and the problems and the opportunities of the business.

In other words, those competent and diligent efforts do not require the company subject to that obligation—do not put it under an absolute obligation to cause the registration statement to become effective.

It puts it under an obligation which is substantially less than an absolute obligation.

In applying the analogy, the jury would be required to determine whether the appellant acted in a "competent and diligent" manner. A "competent and diligent" standard is not materially different from "best efforts."[5]

---

**5.** In *Republic Technology Fund, Inc. v. Lionel Corporation,* 345 F.Supp. 656 (S.D.N.Y.1972), aff'd in part and rev'd in part, 483 F.2d 540 (2d Cir. 1973), *cert. denied,* 415 U.S. 918, 94 S.Ct. 1416, 39 L.Ed.2d 472 (1974), relied on by ATC, the expert testimony was as general as the testimony offered here. The expert stated that a "best efforts" commitment obligated Lionel to work "diligently and competently" to effectuate the registration statement. Since the testimony in *Lionel* was received without objection, its admissibility was not in issue.

**1318**

The cases which appellant submits in support of its argument do not materially aid its position. *Phillips Petroleum Co. v. Payne Oil Corporation*, 146 F.2d 546 (10th Cir. 1944) involved the question of whether or not certain expenses incurred with respect to an oil well were "cost[s] and expense[s] of operation" or "cost[s] and expense[s] of drilling", a technical question peculiar to the oil industry for which specific guidance was provided by the expert. *Arkla Exploration Company v. Boren*, 411 F.2d 879 (8th Cir. 1969) involved the accuracy of the court's instructions concerning a term ("practically impenetrable substance") used in an oil well operating agreement. In a dictum comment on the industry meaning of the term, shown by the expert testimony offered without objection by both parties, the court noted that there was no substantial difference between the general meaning of the words and the meaning attributed to them by the industry.

 Similarly, Mr. Wheat's definition of "best efforts" both in the context of the registration covenant, as shown by the offer of proof, and in underwriting agreements was not substantially different from the common meaning of the words. His testimony would not have contributed any specific facts or conclusions to aid the jury in determining whether the covenant was breached. We find, then, that the court's ruling was not prejudicial error and that reversal is not required.[6]

### B. Exclusion of ATC Letters Offered to Show its Good Faith

ATC tendered four letters in evidence, all of which were written after the happenings giving rise to the suit. All were excluded by the court. Three were dated November 15, 1972, October 1, 1973 and October 9, 1973. These discussed ATC's position with respect to the Cox merger and were written by Mr. Davis, ATC's general counsel. The fourth one was also written by Davis and was dated November 4, 1972. this one was addressed to Cox and commented on Cox's position on the registration.

 The action of the court in excluding letters written after the fact will seldom be disturbed. Apart from the hearsay aspect—and there is such a problem—letters written after a breach and after a party has become aware that litigation is imminent are seldom received. They are characterized as self-serving and inadmissible. *See Stone v. Union Fire Ins. Co.*, 106 Colo. 522, 107 P.2d 241 (1940); *Farris v. Sturner*, 264 F.2d 537 (10th Cir. 1959). The rationale for rejection of such evidence is that a party may not create evidence supportive of its position. Three of these letters were drafted after the decision to postpone registration (November 2, 1972) and after the announcement to United of this decision, November 8, 1972. The fourth was written following ATC's decision to defer registration—at a time when there must have been knowledge that a lawsuit was in the offing. In our view, the decision of the court to exclude was within its province.

### C. The Trial Court's Instructions

ATC's next point expresses its dissatisfaction with the trial court's instructions.

First, it says that the definition of "best efforts" was inadequate. The court should have charged the jury on "the distinct legal meaning of the term" in accordance with its instruction number 8.[7]

---

**6.** The trial court excluded Mr. Wheat's testimony on the ground that it went to the "ultimate issue." The rule of both Colorado and the Tenth Circuit is that expert testimony is not excludable because it bears on the "ultimate issue." *Millers' National Insurance Company v. Wichita Flour Mills Company*, 257 F.2d 93 (10th Cir. 1958); *Bridges v. Lintz*, 140 Colo. 582, 346 P.2d 571 (1959). Such an error in specifying the grounds for exclusion, however, is harmless if, as here, the evidence is excludable on some other ground. 1 Wigmore on Evidence Section 18 (3d ed. 1940); 11 Wright & Miller, Federal Practice and Procedure: Civil Section 2885. In effect, the court here appeared to be holding that the proffered testimony would not have aided the jury. *Cf. New Mexico Savings & Loan Association v. United States Fidelity and Guaranty Company*, 454 F.2d 328 (10th Cir. 1972).

**7.** The proposed instruction was as follows:

A "best efforts" obligation does not require ATC to accomplish a given objective; *i. e.*,

■ We disagree with the contention that the court's instruction was inadequate. Little difference can be perceived between the court's instruction and the tendered one.[8] The court's charge set forth ATC's theories and contentions regarding the meaning of "best efforts" and also included the issue whether ATC met its obligations. The language is consistent with the proposed instruction, the testimony and exhibits and the offer of proof.

Contrary to the further contention of ATC, the court charged the jury on the legal standards applicable to the evidence of "best efforts."[9] Both parties had introduced evidence bearing on the negotiations and the meaning intended for the term "best efforts." When the interpretation is in dispute as it was here, it is a question for the jury.[10] The factual dispute was properly submitted to the jury.

We have not overlooked ATC's assertions relative to other trial court instructions. We find these also to be without merit:

■ It was unnecessary to instruct on waiver or ratification in the absence of evidence to support such instructions. *Smith v. Mill Creek Court, Inc.*, 457 F.2d 589, 592 (10th Cir. 1972).

The court's instruction on estoppel was correct. *See Boddie v. Bond*, 154 N.C. 359, 70 S.E. 824 (1911); *Walker v. Philadelphia Life Ins. Co.*, 127 F.Supp. 26, 30 (E.D.N.C. 1954).

■ We disagree with ATC's contention that in its instruction on damages the court gave the jury a license to speculate. It is well settled that the difficulties in assessing damages do not preclude an injured party from recovering compensation. *See Bigelow v. RKO Radio Pictures, Inc.*, 327 U.S. 251, 265, 66 S.Ct. 574, 90 L.Ed. 652 (1945).

The judgment of the district court is affirmed.

register United's stock. Rather, it requires ATC to make a diligent, reasonable and good faith effort to accomplish that objective. The obligation takes into account unanticipated events and the exigencies of continuing business and does not require such events or exigencies be overcome at all costs. It requires only that ATC exercise all reasonable efforts within a reasonable time to overcome any hurdles and accomplish the objective. The fact that the objective is not accomplished is no indication that the party has not utilized its "best efforts."

8. The court's instruction is as follows:

Defendant contends that it did not breach its contract of February 22, 1972, with the plaintiff in any way. Defendant asserts that the phrase "best efforts" protects the party who has given the promise from the risk that the goal to be achieved will not be reached due to the acts of third parties over which it has no control and allows continuation of normal business efforts and operations so long as it continues to exert diligent, reasonable and good faith efforts to obtain the goal.

Defendant asserts that it did everything reasonably possible to cause the Registration Statement to become effective by reason of action or inaction by third parties over whom ATC had no control.

The defendant asserts that it made a diligent good faith attempt to cause the Registration Statement to become effective.

9. The court's instruction reads as follows:

There has been some evidence introduced in this case that the term "best efforts" has an established usage or special meaning in underwriting agreements between the issuer of securities and an underwriter.

The contract before you is not such an underwriting contract and neither of the parties is an underwriter. Therefore, before you can consider any special meaning given to these words in such underwriting contracts, you must find from all of the evidence that the parties used this language with the intention to adopt that special meaning.

\* \* \* \* \* \*

To establish its claim of breach of contract under Count I the plaintiff must show by a preponderance of the evidence that the defendant failed to use its best efforts to cause a registration statement to become effective, that is, that the defendant should have done something more than it did or did something that it should not have done.

10. *Jaeco Pump Company v. Inject-O-Meter Manufacturing Company*, 467 F.2d 317, 320 (10th Cir. 1972); 3 Corbin on Contracts Section 554, pp. 226–227; 9 Wigmore on Evidence Section 2256 (3d ed. 1940).